# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

Charles P. Guarino, Esq.
Law Office of Charles P. Guarino
323 Gill Lane, Suite 12-I
Iselin, New Jersey 08830
(646) 727-0708
Attorneys for Plaintiff

| | |
|---|---|
| LIGER6, LLC, | |
| Plaintiff, | Hon. |
| vs. | 13-4694 (DMC) |
| SARTO ANTONIO & | Civil Action No.  (   ) |
| SOREN KREBS, | Civil Action |
| Defendants. | COMPLAINT AND JURY DEMAND |

Plaintiff Liger6, LLC ("Liger"), through its undersigned counsel, for its complaint against Defendants Sarto Antonio ("SA") and Soren Krebs ("Krebs"), alleges upon knowledge to itself and its own acts, and otherwise upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is a civil action in which Liger seeks a declaratory judgment denying ownership and registration of the SARTO trademark in the United States to SA and granting ownership and registration of same to Liger; as well damages against the defendants for claims of federal unfair competition, common law unfair competition, unfair competition under N.J.S.A. 56:4-1, tortious interference with contract, breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion, arising under the Lanham Act, 15 U.S.C. §§ 1051-1127 and the common and statutory laws of the State of New Jersey.

2.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1338 and 15 U.S.C. §1121, as well as and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Jurisdiction is also proper over the parties pursuant to 28 U.S.C. § 1322(a)(1) (diversity of citizenship), because all parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is properly found in this judicial district pursuant to 28 U.S.C. § 1391(a)(2).

## THE PARTIES

4.      Plaintiff Liger6, LLC ("Liger") is a limited liability company duly organized and existing under the laws of New Jersey, located at 2315 Windsor Park Court, Englewood, New Jersey 07631.

5.      On information and belief, Defendant Sarto Antonio ("SA") is an individual located at Via Arno, 65, I-30030 Pianiga (VE), Italy.

6.      On information and belief, Defendant Soren Krebs ("Krebs") is an individual located at 2647 Sixth Street, Apartment 10, Santa Monica, California 90405.

## FACTUAL ALLEGATIONS

7.      Since 2007, Liger has been a distributor of bicycles and bicycle components to the public through sales to bicycle retailers and individuals throughout the United States.

8.      SA is an Italian manufacturer of bicycle frames, operating exclusively as an original equipment manufacturer (OEM) to the bicycle manufacturing market outside the United States; i.e., SA manufactured bicycle frames, which were then sold to third party bicycle manufacturers for use as component parts of their own finished bicycles, which were in turn marketed and sold under the third party manufacturers' own trademarks.

9.      Upon information and belief, prior to its agreement with Liger, SA had operated solely as

an OEM to foreign (primarily Italian and other European) third party bicycle manufacturers, and had never sold products within the United States in any capacity.

10.     Upon information and belief, prior to its agreement with Liger, SA had never offered or sold products under the SARTO trademark, nor had he ever registered or asserted ownership over any trademark in any jurisdiction.

11.     On or about September 2010, SA approached Liger to seek its assistance in representing SA within the heretofore untapped United States market.

12.     The parties developed a proposal under which SA would act as Liger's OEM, manufacturing bicycle frames to Liger's specifications, which Liger would then offer to the United States market. Liger would market the frames as well as completed bicycles, assembled by Liger in the United States using SA's frames.

13.     Given that SA had no prior business within the United States, and therefore would not be competing against its own third party manufacturer clients, Liger further proposed the novel idea that the bicycle frames and assembled bicycles be marked, marketed, and sold in the United States under the trademark SARTO.

14.     On or about December 2010, SA orally accepted the proposal, creating an agreement between Liger and SA. In reliance upon this agreement, Liger immediately commenced performance under the agreement, and began advertising, marketing, and selling bicycle frames and bicycles in the United States under the SARTO mark.

15.     In addition to the SARTO word mark, Liger created both a separate SARTO Design Mark as well a "Needle and Scissors" Design Mark for the front badge (alluding to the Italian term "sarto", the English translation of which is "tailor"). Liger directed SA to place these marks on each bicycle frame manufactured under the agreement.

16.     On or about January 2011, SA began performing under the agreement by manufacturing bicycle frames for Liger imprinted with the SARTO mark and other design marks, and shipping

such frames to Liger in accordance with the parties' agreement.

17.     In reliance upon the parties' agreement, Liger placed its first order with SA on December 27, 2010, which SA fulfilled on January 6, 2011. Since that initial order, Liger has paid to SA approximately $250,000 in connection with the acquisition of bicycle frames from SA. This amount also includes clandestine cash payments demanded by SA, which were made directly to SA's son, Enrico Sarto, by Liger's principals in 2012 and 2013 at SA's behest. These amounts were never invoiced by SA to Liger.

18.     All bicycle frames acquired by Liger under the agreement were manufactured to Liger's specifications and bearing the SARTO mark pursuant to the agreement.

19.     Beginning upon the parties' entry into the agreement in December 2010, and in reliance upon SA's continuous and ongoing representations, Liger invested substantial time, money, and effort to the advertising, promotion, and marketing of bicycles and bicycle frames under its SARTO mark within the United States, spending approximately $500,000 on advertising, promotion, and marketing expenses alone from December 2010 and December 2012. In addition, Liger spent thousands of dollars on attorneys, consultants, and related business matters, including the ongoing payment of insurance premiums for $5,000,000 in liability insurance coverage, and its principals expended countless hours of their own time to launch and build the brand and the attendant business.

20.     Liger further developed and promoted the SARTO mark in the United States through the sale, at steeply discounted prices, of bicycle frames and bicycles to leading cycling retailers and individuals in an effort to promote brand awareness among these important opinion makers within the cycling industry.

21.     In furtherance of its marketing efforts, Liger recruited sales representatives throughout the United States to assist in the marketing and sale of SARTO-branded bicycles and bicycle frames on a regional level.

22. Among such representatives was defendant Krebs, with whom Liger negotiated a written Independent Manufacturers Representative Agreement in January 2013 ("Rep Agreement"), covering the Southern California region. As part of the Rep Agreement, Liger provided Krebs with two SARTO-branded bicycles at no charge, the actual value of which was approximately $18,000, for use as demonstration models.

23. During this time period, SA induced Liger to continue investing time, money, and effort in the business by continually reassuring Liger that he would enter into a formal, written agreement memorializing the terms of the December 2010 oral agreement. To that end, the parties engaged in numerous discussions, and Liger's counsel sent SA numerous drafts of written agreements for discussion and review between August 2011 and October 2012. Nevertheless, despite SA's representations, he steadfastly delayed (and ultimately refused) the finalization and execution of a formal written agreement between the parties.

24. As owner of the SARTO mark in the United States, Liger initially applied to the United States Patent and Trademark Office ("US-PTO") to register the SARTO mark on August 20, 2011 under Trademark Application Serial No. 85/400,510. Registration was granted on July 24, 2012; however, Liger voluntarily surrendered the registration for cancellation under Section 7 of the Lanham Act on December 7, 2012, after discovering that it had erroneously named SA as a joint owner of the mark at the time the application was filed.

25. On March 20, 2012, in abrogation of Liger's United States rights in the SARTO mark, SA filed U.S. Trademark Application Serial No. 79/113,491 with the US-PTO ("SA Application"), alleging rights in the United States for the mark SARTO based upon International Registration No. 1117656, based in turn upon SA's February 29, 2012 Italian application to register the SARTO mark. Consequently, the SA Application has a priority date of February 29, 2012.

26. SA's applications to register the SARTO mark, including its Italian, Madrid, and US-PTO applications, were all filed long after Liger acquired common law rights in its SARTO

trademark through the marketing and sale of goods bearing the SARTO mark in the United States.

27. Liger subsequently filed a new application with the US-PTO on December 19, 2012 for the SARTO mark under Trademark Application Serial No. 85/806,954 ("Liger Application). The Liger Application indicated an actual date of use in commerce of the SARTO trademark on bicycle frames and bicycles in the United States since at least as early as January 2011.

28. As a consequence of the prior filing of the improper SA Application, the US-PTO has cited the SA Application against the Liger Application as a potential basis for refusal due to likelihood of confusion should it mature to registration, and subsequently suspended the Liger Application pending final disposition of the SA Application.

29. Upon information and belief, SA has never sold any significant volume of goods bearing the SARTO mark anywhere in the world, and had not used, nor evinced any intention to use, the term SARTO as a trademark indicating the source of goods prior to the agreement between the parties and Liger's subsequent use of the SARTO mark within the United States.

30. Since its adoption of the SARTO mark, Liger has extensively and exclusively used the SARTO mark on and in connection with bicycles and bicycle frames in the United States. These goods have been advertised, marketed, and sold in the United States by Liger under the SARTO trademark. In reliance on the agreement between Liger and SA, Liger has devoted substantial time, money and effort in the marketing, promotion, and sale of goods under its SARTO mark.

31. Liger's strenuous efforts and copious expense have caused the SARTO trademark to become widely and favorably known to the relevant purchasing public as a designation of the source of Liger's goods; particularly, purchasers of bicycles and bicycle frames within the United States. As a consequence of Liger's efforts and expense, the SARTO mark has developed valuable goodwill within the United States.

32. SA induced Liger to continue investing time, money, and effort in the business by

continually reassuring Liger that he would enter into a formal, written agreement memorializing the terms of the December 2010 oral agreement. To that end, the parties engaged in numerous discussions and exchanged multiple drafts and notes regarding a written agreement between September 2011 and February 2013.

33. Nevertheless, despite SA's representations to the contrary, SA persistently delayed, and ultimately refused to execute, a formal written agreement between the parties.

34. By February 2013, SA's dual actions – delaying the formal written agreement between the parties, while applying for sole ownership of the United States registration of the SARTO mark – had caused considerable animosity to develop between the parties.

35. Liger's efforts resulted in the opening of a key account with Competitive Cyclist, a prominent online bicycle retailer located in Salt Lake City, Utah, which had expressed an interest in an immediate purchase of 250 bicycle frames, valued at approximately $700,000, bearing Liger's SARTO mark.

36. On or about March 4, 2013, Liger's principals and SA's son Enrico Sarto, after participating in a bicycle industry trade show in Denver, Colorado to promote the SARTO brand, travelled together to Salt Lake City, Utah to discuss and finalize the business arrangement with Competitive Cyclist to purchase SARTO-branded bicycle frames.

37. Upon information and belief, SA, seeing concrete evidence of Liger's success in marketing bicycle frames in the United States under the SARTO mark, saw an opportunity to freeze out Liger and usurp this business for itself.

38. By March 15, 2013, SA unilaterally ceased fulfillment of Liger's orders under the oral agreement, and began contacting Liger's customers, including Competitive Cyclist, directly to solicit orders for bicycle frames bearing Liger's SARTO trademark.

39. On April 25, 2013, Liger filed an opposition proceeding with the U.S. Trademark Trial and Appeal Board ("TTAB") against the pending SA Application.

40. Upon information and belief, SA's actions are a blatant attempt to usurp Liger's rights to the SARTO trademark in the United States, and the goodwill underlying same, the accrual of which is entirely due to Liger's efforts and expenditure of resources in establishing the SARTO mark in the United States.

41. Upon information and belief, on or about March 15, 2013, in abrogation of his agreement with Liger, SA began offering SARTO-branded bicycle frames and bicycles in the United States directly to retailers, as well as through distributors and manufacturers representatives.

42. Upon information and belief, defendant Krebs abrogated and abandoned the Rep Agreement with Liger to enter into an alternate agreement with defendant SA to circumvent Liger and directly distribute, market, and sell SARTO-branded bicycle frames and bicycles to retailers within the United States. Despite his abrogation and abandonment of the Rep Agreement, Krebs failed to return one of the two SARTO-branded bicycles provided to him as a demonstration model, the value of which is approximately $8,900.

43. With full knowledge of Liger's ownership of the SARTO mark, defendants have begun misusing the mark to distribute, market, and sell infringing products bearing the SARTO trademark, without Liger's permission or consent, and to the detriment and injury of Liger.

COUNT I
DECLARATORY JUDGMENT
OF TRADEMARK OWNERSHIP

44. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 43 of this Complaint as if fully set forth again herein.

45. Liger is entitled to a declaratory judgment denying registration of SA's pending U.S. Trademark Application Serial No. 79/113,491.

46. Liger is entitled to a declaratory judgment ordering registration of its pending Trademark

Application Serial No. 85/806,954.

## COUNT II
### FALSE DESIGNATION OF ORIGIN OF PRODUCTS, FALSE ADVERTISING AND FALSE DESCRIPTION AND REPRESENTATION

47. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 46 of this Complaint as if fully set forth again herein.

48. This cause of action arises under Section 43(a) of the Trademark Act of 1946 as amended (15 U.S.C. § 1125(a)) for false designation of the origin of products, false description and representation, and false advertising of the mark (15 U.S.C. § 1125(c)).

49. By reason of the foregoing acts, Defendants have falsely designated the origin of the products they are marketing and have otherwise made false descriptions and representations about such products. Defendants' activities are likely to create confusion among the purchasing public, are likely to deceive purchasers concerning the source or sponsorship of such products, and will otherwise mislead purchasers as to the origin of the products sold by or on behalf of Defendants.

50. Defendants' misleading use of the mark constitutes false advertising, false designation of origin, and false representation in and affecting interstate commerce.

## COUNT III
### COMMON LAW OF UNFAIR COMPETITION

51. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 50 of this Complaint as if fully set forth again herein.

52. This cause of action arises under the common law of unfair competition.

53. Defendants, by reason of the foregoing acts, have traded upon and appropriated the reputation and valuable goodwill of Liger and have acted to create the likelihood of confusion and mistake on the part of the purchasing public as to the source of Plaintiff's products.

Case 2:33-av-00001   Document 18849   Filed 08/05/13   Page 10 of 15 PageID: 461378

54. Defendants' acts are likely to mislead the public that Defendants are in some way sponsored by or associated with Liger, and/or create the impression that Defendants' and Plaintiff's products are distributed under the same corporate aegis and authority.

55. Defendants' activities constitute unfair competition and a misappropriation and infringement of Liger's common law trademark rights.

## COUNT IV
## UNFAIR COMPETITION UNDER N.J.S.A. 56:4-1

56. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 55 of this Complaint as if fully set forth again herein.

57. This count arises under N.J.S.A. 56:4-1, a statute of the State of New Jersey.

58. Defendants, by reason of the foregoing wrongful acts, have engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of their trade which have injured Liger within the meaning, and in violation of, the statutes of the State of New Jersey.

## COUNT V
## BREACH OF CONTRACT

59. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 58 of this Complaint as if fully set forth again herein.

60. Liger and Defendant SA were parties to a binding and enforceable contract relating to the manufacture, distribution, and sale of bicycle products under the SARTO mark in the United States.

61. Liger fully performed its obligations under the contract.

62. SA breached the contract by failing to perform the obligations it accepted under the Agreement.

Case 2:33-av-00001   Document 18849   Filed 08/05/13   Page 11 of 15 PageID: 461379

63. As a direct and proximate result of SA's breaches, Liger has been damaged in an amount to be determined at trial.

## COUNT VI
### TORTIOUS INTERFERENCE WITH CONTRACT

64. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 63 of this Complaint as if fully set forth again herein.

65. Liger and Defendant Krebs were parties to a binding and enforceable contract relating to the distribution and sale of bicycle products under the SARTO mark in the United States.

66. Defendant SA intentionally and improperly interfered with the contract between Liger and Defendant Krebs by inducing Krebs, through false statements and misrepresentations concerning Liger, not to perform the contract.

67. SA communicated these false statements and misrepresentations to Krebs in order to induce Krebs to abandon his agreement to represent and sell Liger's SARTO products in favor of selling the same products on SA's behalf.

68. As a direct and proximate result of SA's interference, Liger has been damaged in an amount to be proved at trial.

## COUNT VII
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

69. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 68 of this Complaint.

70. Defendants breached the implied covenant of good faith and fair dealing by acting arbitrarily and in bad faith so as to deprive Liger of the benefits of the agreement. Among other things, SA decided to usurp Liger's rights to the SARTO trademark in the United States, and the

goodwill underlying same, the accrual of which is entirely due to Liger's efforts and expenditure of resources in establishing the SARTO mark in the United States.

71. In addition, SA worked to undermine Liger's business and reputation, for the purpose of circumventing Liger and directly distributing, marketing, and selling SARTO-branded bicycle frames and bicycles to retailers within the United States.

72. As a direct and proximate result of SA's actions, Liger has been damaged in an amount to be proved at trial.

## COUNT VIII
## CONVERSION

73. Liger repeats and realleges each and every allegation contained in Paragraphs 1 through 72 of this Complaint.

74. Pursuant to the Rep Agreement, Liger provided Defendant Krebs with two SARTO-branded demonstration bicycles free of charge, the actual value of which was approximately $18,000.

75. Following Krebs' unilateral and unauthorized termination of the Rep Agreement, Liger had the right to recover possession of both of its demonstration bicycles, one of which is still being unlawfully retained by Krebs.

76. Defendant Krebs has exercised complete dominion and control over the remaining demonstration bicycle by intentionally taking the bicycle and continuing to hold and keep possession of the bicycle without Liger's permission.

77. Despite Liger's repeated demands, Defendant Krebs has refused to return the remaining demonstration bicycle.

78. Defendant Krebs' intentional act of taking and retaining Liger's property without permission or authority is in derogation of Liger's right of possession.

79. As a direct and proximate result of Krebs' actions, Liger has been damaged in an amount to be proved at trial.

## ALLEGATION OF DAMAGE

Liger has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendants' aforesaid activities. Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to Liger's irreparable damage. Liger's remedy at law is not adequate to compensate it for the injuries suffered and threatened. By reason of Defendants' acts complained of herein, Liger has suffered monetary damages in an amount not yet determined.

**WHEREFORE**, Liger demands the following relief:

1. That this Court order the abandonment of SA's pending U.S. Trademark Application Serial No. 79/113,491, and order the registration of Liger's pending Trademark Application Serial No. 85/806,954.

2. That Defendants, their agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained during the pendency of this action, and permanently thereafter, from (a) using the SARTO mark or any colorable imitation thereof; (b) advertising, distributing, offering for sale, or selling any goods or services using the SARTO mark or any variations thereof; and (c) otherwise competing unfairly with Liger or injuring its business reputation.

3. That Defendants be required to account for and pay over to Liger all damages sustained, the amount of which cannot be calculated at this time;

4. That Defendants be required to account for and pay over to Liger all profits realized by Defendants by reason of their unlawful acts alleged herein, and that such amounts be trebled, as may be provided by law;

5. That Defendants be required to pay Liger punitive damages as may be permitted by law or in the discretion of the Court;

6. That Liger be awarded the costs and disbursements of this action, together with all reasonable attorneys' fees and lawful interest; and

7. Awarding Plaintiff such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury on all issues so triable.

The Law Office of Charles P. Guarino<br>
Attorneys for Plaintiff

Dated: August 5, 2013

/s/ Charles P. Guarino
CHARLES P. GUARINO

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

This matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

The Law Office of Charles P. Guarino<br>
Attorneys for Plaintiff

Dated:  August 5, 2013                              /s/ Charles P. Guarino
                                                    CHARLES P. GUARINO