**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LIGER6, LLC, | : | CIVIL ACTION NO. 13-4694 (JLL) |
| Plaintiff, | : | **O P I N I O N** |
| v. | : | |
| SARTO ANTONIO, et al., | : | |
| Defendants. | : | |

**LINARES, District Judge**

This is an action wherein the parties seek, among other things, a determination concerning the "ownership and registration of the SARTO trademark in the United States" insofar as the trademark would be applied to bicycles, bicycle frames, and bicycle parts. (Dkt. 1 at 1; see dkt. 42 at 14.)[1]

The plaintiff — Liger6, LLC ("Liger6") — asserts claims in the complaint for:

- a judgment declaring it is entitled to register the "SARTO" mark in the United States for bicycles, bicycle frames, and bicycle parts (Count I);

- false designation of origin, false advertising, and false description under federal law ("false designation claim") (Count II);

- common law unfair competition (Count III);

- unfair competition under New Jersey state law (Count IV);

- breach of contract (Count V);

- tortious interference with contract (Count VI);

- breach of the implied covenant of good faith and fair dealing (Count VII); and

---

[1] This Court will cite to documents filed on the Electronic Case Filing System ("ECF") by the docket entry numbers with a "dkt." designation and the page numbers imposed by ECF.

- conversion (Count VIII).

The remaining defendants in the action are Sarto S.r.l., which is a limited liability company under Italian law; and Sarto Antonio, which is a sole proprietorship (collectively hereinafter, "Sarto Entities"). (See dkt. 42 at 12; dkt. 84-15 at 54–56.) The Sarto Entities assert certain counterclaims ("counterclaims in issue") for, inter alia:

- a judgment declaring they are entitled to register the SARTO mark in the United States for bicycles, bicycle frames, and bicycle parts (Counterclaim Count I);

- false designation of origin under federal law (Counterclaim Count II);

- unfair competition under federal law (also in Counterclaim Count II);

- common law infringement (Counterclaim Count III);

- common law unfair competition (Counterclaim Count IV);

- common law trade name infringement (Counterclaim Count VI);

- cybersquatting (Counterclaim Count VII); and

- common law right of publicity (Counterclaim Count XI).[2]

The Sarto Entities now move pursuant to Federal Rule of Civil Procedure 56 for summary judgment in their favor as to all of Liger6's claims and the counterclaims in issue. (See dkt. 81; dkt. 85; dkt. 92.) Liger6 opposes the motion. (See dkt. 84; dkt. 89.)

This Court will resolve the motion upon review of the papers and without oral argument. See L.Civ.R. 78.1(b). This Court presumes the familiarity of the parties with the factual context and procedural history of this action. For the following reasons, this Court will grant the motion insofar as it concerns all of the aforementioned claims and the counterclaims in issue, with the exception of the breach of contract claim, the claim for breach of the implied covenant of good faith and fair dealing, and the conversion claim.

---

[2] The other counterclaims will not be addressed in this Opinion.

## BACKGROUND

The Sarto Entities are controlled by Antonio Sarto and his son, Enrico Sarto. Both are Italian citizens and reside in Italy. (See dkt. 42 at 2, 12; dkt. 42-2 at 12; dkt. 84-15 at 7.) Antonio Sarto has been in the business of manufacturing bicycles and bicycle frames in Italy for more than 30 years. (See dkt. 42 at 13; dkt. 42-2 at 4–5.) Enrico Sarto has been running the business with him for the last few years. (See dkt. 81-1 at 7; dkt. 81-4 at 1–2; dkt. 84-15 at 8.)

Liger6 is primarily controlled by Marco Bonelli, an "investment analyst executive" who professes to be in the business of marketing bicycle products in the United States. (See dkt. 1 at 2; dkt. 42-2 at 6; dkt. 81-1 at 10; dkt. 81-8 at 5, 10.) Soren Krebs, who was formerly a defendant in this action, is a salesperson initially recruited by Liger6 to sell products in the United States made by the Sarto Entities. (See dkt. 1 at 5.)

Liger6 asserts that it was contacted in 2010 by the Sarto Entities; the Sarto Entities were seeking to have their bicycle frames promoted in the United States. (See dkt. 1 at 3; dkt. 84-1 at 2–3.) Liger6 also asserts that during the initial discussions, Liger6 proposed to the Sarto Entities "the novel idea" of producing bicycle frames bearing the SARTO mark, which Liger6 would then in turn either: (1) offer on the United States market for other manufacturers to use in manufacturing bicycles, or (2) incorporate into bicycles to be assembled by Liger6. (See dkt. 84-1 at 3.) In stark contrast, the Sarto Entities argue that they were: (1) already selling bicycle frames with and without the SARTO mark on the United States market as early as 2006, and raise as an example that they had a relationship with an entity known as Javelin, LLC to sell their products long before they had any contact with Liger6; and (2) initially contacted by Liger6, which offered to help them expand their presence in the United States. (See dkt. 42 at 13; dkt. 81-1 at 9; dkt. 81-3 at 1–3; dkt. 84-15 at 11.)

Liger6 argues that as the relationship with the Sarto Entities progressed, it: (1) created a needle-and-scissors logo to accompany the SARTO mark — because "sarto" is an Italian word for "tailor" — that the Sarto Entities verbally agreed to use in December 2010; (2) directed the Sarto Entities to produce frames bearing the SARTO mark and the logo; and (3) immediately began marketing and selling bicycles and bicycle frames in the United States bearing the SARTO mark. (See dkt. 1 at 3; dkt. 84-1 at 3.) In contrast, the Sarto Entities assert that those connected to Liger6 were mere salespeople and distributors for their products, although they admit that they took Liger6's advice concerning use of the logo on occasion. (See dkt. 42 at 13; dkt. 84-15 at 26–27, 33–34.)

In January 2011, the Sarto Entities started producing bicycle frames with the SARTO mark for shipment to Liger6. From that time through December 2012, Liger6 paid $250,000 to the Sarto Entities for bicycle frames. Liger6 then spent more than $500,000 marketing products in the United States manufactured by the Sarto Entities, and also incurred expenses for attorney fees and liability insurance. In addition, Liger6 sold products from the Sarto Entities at a discount to promote brand awareness. (See dkt. 1 at 3–4.) Liger6 also asserted that it proposed at some point in 2011 that it and the Sarto Entities should jointly register the SARTO mark with the United States Patent and Trademark Office ("USPTO"), thereby making Liger6 the exclusive American partner of the Sarto Entities. (See dkt. 84-1 at 4.)

Liger6's counsel then proceeded to send several proposed versions of written agreements to memorialize the overall business arrangement to counsel for the Sarto Entities in Italy. Liger6 asserts that the Sarto Entities advised that they would eventually enter into one of the proposed agreements. Even though Liger6 sent several proposed agreements to the Sarto Entities, and made changes at the direction of their counsel, the Sarto Entities never signed any of those proposed agreements. (See dkt. 1 at 5–7; dkt. 81-8 at 6; dkt. 84-1 at 4–9; dkt. 84-2 at 2–4.)

Liger6 also set up a website with the domain name of "sartocycles.com" to promote products in the United States that were manufactured by the Sarto Entities. (See dkt. 42 at 20.)[3] The website features photographs of Antonio Sarto and Enrico Sarto, as well as their workshop. (Id.; dkt. 81-1 at 9–12; dkt. 81-4 at 3–5.) The website also states that it is offering products manufactured by the Sarto Entities, and contains background information concerning the Sarto Entities. (See dkt. 81-1 at 9–12.) Liger6 used a web designer and a photographer recommended by the Sarto Entities in setting up the website. (See dkt. 42-2 at 10; dkt. 84-1 at 6.)

What follows is a timeline of events concerning the attempts to register the SARTO mark with the USPTO.

August 2011: Liger6 applies to the USPTO to register the SARTO mark, listing itself and the Sarto Entities as co-owners, even though the Sarto Entities had not signed any of the proposed agreements drafted by Liger6. (See dkt. 1 at 5; dkt. 42 at 4; dkt. 81-1 at 12; dkt. 81-6 at 30–31.) In that application, Liger6 admitted that the SARTO mark was first used by the Sarto Entities "at least as early as … 1985". (See dkt. 81-6 at 47.)

February 2012: The Sarto Entities apply to register the SARTO mark in Italy. (See dkt. 1 at 5; dkt. 42 at 4.)

March 2012: The Sarto Entities apply to the USPTO to register the SARTO mark, seemingly unaware of the pending application filed by Liger6. (See dkt. 1 at 5; dkt. 81-6 at 117.)

July 2012: The USPTO grants the Liger6 application, and permits Liger6 to register the SARTO mark as it relates to bicycle components such as bicycle frames. (See dkt. 1 at 5; dkt. 81-6 at 25.)

---

[3] Liger6 also adopted the domain names "sartobikes.com" and "sartobicylces.com", both of which directed to sartocycles.com. (See dkt. 81-8 at 26; dkt. 85 at 5; dkt. 92 at 17.)

November 2012: The Sarto Entities demand that Liger6 withdraw the Liger6 registration, claiming that they were unaware that Liger6 had even applied. (See dkt. 81-1 at 13.)

December 7, 2012: Liger6 voluntarily surrenders the registration. (See dkt. 1 at 5; dkt. 81-6 at 22; dkt. 81-6 at 22.)

December 19, 2012: Liger6 files a new application with the USPTO to register as the sole owner of the SARTO mark. In response, the USPTO cites the pending application by the Sarto Entities as a potential basis for refusal, and suspends the new Liger6 application pending the final disposition of the application by the Sarto Entities. (See dkt. 1 at 6.)

March 4, 2013: Bonelli and Enrico Sarto travel together to a trade show in Colorado and meet with a Utah company that is interested in buying frames produced by the Sarto Entities. (See dkt. 1 at 7; dkt. 84-1 at 10.)

March 15, 2013: The Sarto Entities unilaterally cease their arrangement with Liger6, and contact customers previously dealing with Liger6 — including the aforementioned Utah company — to directly solicit orders for products bearing the SARTO mark. (See dkt. 1 at 7–8.)

April 25, 2013: Liger6 files opposition before the United States Trademark Trial and Appeal Board ("TTAB") to the application by the Sarto Entities to register the SARTO mark alone. (See dkt. 1 at 7; dkt. 81-6 at 133–37; dkt. 81-7 at 9–14.)

August 2013: Liger6 brings this civil action. The TTAB, upon being notified by Liger6 about the civil action, suspends and stays its proceedings pending the outcome here. (See dkt. 81-1 at 16; dkt. 81-8 at 2.)

March 2014: The Sarto Entities bring an action in an Italian court to enjoin Liger6 from using the SARTO mark in Italy and the rest of Europe. The Italian court eventually finds that the Sarto Entities had used the SARTO mark for several years, and that the Sarto Entities had endeavored to register the mark in Italy and various other countries. As a result, the Italian court

enjoined Liger6 from using the SARTO mark in Italy and the rest of Europe. (See dkt. 42 at 13–14; dkt. 42-2.)

The business relationship between the Sarto Entities and Liger6 is now completely severed. After 2013, Liger6 stopped offering products for sale that were manufactured by the Sarto Entities. However, Liger6 continues to put itself out as selling products manufactured by the Sarto Entities under the SARTO mark on the sartocycles.com website. (See dkt. 81-8 at 15.) To counteract the effect of the sartocycles.com website, the Sarto Entities have set up websites under "sartoantonio.com" and "sartocycles.net". (See dkt. 81-4 at 3.)

## ARGUMENTS AND ANALYSIS

### I.  Procedural issue not raised by the parties

The TTAB stayed its proceedings pursuant to its own regulations. See 37 C.F.R. 2.117(a). This civil action was brought in 2013, but it was not assigned to this Court until March 2015. (See dkt. 51.) A dispute also arose in 2015 between Liger6 and its two separate attorneys, and the status of Liger6's legal representation was rendered unsettled until December 2015. (See dkt. 53 (April 2015 motion to withdraw by first attorney representing Liger6); dkt. 64 (August 2015 order denying first attorney's motion based on first attorney's stated intention to continue to represent Liger6); dkt. 72 (December 2015 motion to withdraw by second attorney representing Liger6); dkt. 76 (December 2015 order granting second attorney's motion to withdraw).)

It might have been prudent in 2013 to stay this civil action, and to defer to the TTAB's expertise in resolving disputes concerning trademark registration. See Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 853 (2d Cir. 1988) (noting primary jurisdiction doctrine insofar as it concerns the TTAB may be applicable when a civil action concerns a dispute over a trademark registration); Zany Toys, LLC v. Pearl Enters., LLC, No. 13-5262, 2015 WL 404644, at *1–8 (D.N.J. Jan. 28, 2015) (deferring to the expertise of the TTAB concerning a dispute over

7

trademark registration, even though TTAB suspended its proceedings when the civil action was commenced); Driving Force, Inc. v. Manpower, Inc., 498 F.Supp. 21, 23–26 (E.D. Pa. 1980) (staying civil action in deference to TTAB's expertise in a dispute over trademark registration, even though TTAB stayed its proceedings in view of the civil action).

This Court is not inclined to defer to the TTAB at this juncture. A federal district court is authorized to address a trademark registration dispute. See 15 U.S.C. § 1119 (stating court may determine the right to register a mark). In addition, sending the parties back to the TTAB at this juncture would only cause further delay and expense, and would not serve the interests of justice.

## II. Standard for summary judgment

The well-settled standard for resolving a motion for summary judgment will not be restated here. See Fed.R.Civ.P. 56(a) (providing for award of summary judgment if there is no genuine dispute of material fact and movant is entitled to judgment as matter of law); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (setting forth standard); United States ex rel. Kosenke v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (setting forth standard).

## III. Parts of the motion to be granted

### A. Declaratory judgment claim and counterclaim

The Sarto Entities argue the following in support of summary judgment in their favor on the declaratory judgment claim and the declaratory judgment counterclaim, which both concern the right to exclusively register the SARTO mark with the USPTO. First, the Sarto Entities argue that they were the first ones to use the SARTO mark overseas and in the United States in connection with an established business, i.e., the manufacture of bicycle frames, which this Court agrees is a strong argument in favor of their claim to exclusive rights in the mark. See Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d Cir. 1991). The Sarto Entities sold bicycle frames in the United States before they and Liger6 entered into a business

relationship. Second, they argue that Liger6 has not manufactured bicycles or bicycle parts on its own, that it merely sold products made by the Sarto Entities, and that it identified the Sarto Entities as the source of anything it offered for sale. Third, they argue that they have been awarded the registration of the SARTO mark in Italy and the rest of Europe, thereby strengthening their claim to exclusive possession of that mark here. See 15 U.S.C. § 1126(e) (stating a mark registered in the country of origin of a foreign applicant may be registered in the United States). Fourth, and most important of all, the SARTO mark bears the name of those in control of the Sarto Entities. This Court finds these arguments to overwhelmingly support a prima facie showing by the Sarto Entities of entitlement to summary judgment on this issue.

Liger6 points out in response that it continually sent proposed agreements to the Sarto Entities containing provisions calling for the joint ownership of the SARTO mark in the United States, and that the Sarto Entities did not object until Liger6 was initially successful in registering the SARTO mark. Liger6 also characterizes the use by the Sarto Entities of the SARTO mark as "sporadic and infrequent", yet it concedes that the Sarto Entities have sold bicycle frames in the Unites States since at least 2006, which was several years before they went into business with Liger6. (Dkt. 84 at 5.)

This Court finds that Liger6 has failed to rebut the prima facie showing by the Sarto Entities of entitlement to summary judgment on the declaratory judgment claim and counterclaim. The Sarto Entities had been using the SARTO mark in the United States and abroad, and never signed off on any of Liger6's proposed agreements concerning joint ownership of the SARTO mark. The efforts of Liger6 in promoting the products of the Sarto Entities in the United States may support an award of relief as to other claims in the complaint, discussed infra, but not on the issue of the registration of the mark. Therefore, this Court will grant the part of the motion concerning the declaratory judgment claim and counterclaim.

9

**B.     False designation claim and false designation of origin counterclaim**

A party asserting a claim for false designation of origin, false advertising, and false description must show the likelihood of damage by (a) the use by another party of a word, term, name, symbol, device, or false designation of origin in interstate commerce, (b) in connection with goods or services, (c) which is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the goods or services at issue. See Trade Media Holdings Ltd. v. Huang & Assocs., 123 F.Supp.2d 233, 242 (D.N.J. 2000); see 15 U.S.C. § 1125(a)(1)(A). In addition, a party must show that the commercial message or statement at issue is either: (1) literally false; or (2) literally true or ambiguous, but would tend to deceive consumers. See Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91–92 (3d Cir. 2000); Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292 F.Supp.2d 594, 598–99 (D.N.J. 2003); see 15 U.S.C. § 1125(a)(1)(B).

The Sarto Entities have made a prima facie showing of entitlement to summary judgment on the false designation of origin counterclaim by demonstrating that they no longer provide any products to Liger6; that Liger6 still insists on putting itself out as selling products manufactured by the Sarto Entities via the sartocycles.com website; and that Liger6's conduct is deceptive in that it has no products manufactured by the Sarto Entities to offer for sale. In response, Liger6 merely argues that its conduct in currently putting itself out as selling products manufactured by the Sarto Entities "was done with the consent and cooperation of [the Sarto Entities]", and admits that it "has no inventory of SARTO-branded goods to sell to customers". (Dkt. 84 at 9 (emphasis added).)

This Court finds that Liger6 has failed to rebut the prima facie showing by the Sarto Entities of entitlement to summary judgment on the false designation of origin counterclaim. Again, the efforts of Liger6 in previously promoting the products of the Sarto Entities in the

United States may support an award of relief on other grounds, discussed infra, but not on this issue. This Court will therefore grant the part of the motion concerning the false designation of origin counterclaim. Relying on the same reasoning, this Court will also grant the part of the motion concerning the false designation claim.

### C. Claims for unfair competition under common law and New Jersey state law; counterclaims for unfair competition under federal law and common law

This Court will address the claims and counterclaims concerning unfair competition under federal law, New Jersey state law, and the common law simultaneously. The standards for liability under these types of causes of action are nearly identical, and a finding of liability under federal law leads to a finding of liability as to the others. See CSC Holdings, LLC v. Optimum Networks, Inc., 731 F.Supp.2d 400, 410–11 (D.N.J. 2010); see also 15 U.S.C. § 1125(a); N.J.S.A. 56:4-1.

A claim for unfair competition is established by showing that: (1) the mark at issue is valid and legally protectable; (2) the mark at issue is indeed owned by the party seeking to use it; and (3) the use of the mark by another party to identify goods or services is likely to create confusion concerning the origin of the goods or services. See CSC Holdings, LLC, 731 F.Supp.2d at 405–06; see also 15 U.S.C. § 1125(a).

This Court has already determined that the Sarto Entities are entitled to register with the USPTO as the sole owners of the SARTO mark, thereby satisfying the first two elements. See supra. The Sarto Entities have also demonstrated their entitlement to summary judgment on the third element due to confusion caused by Liger6's use of the mark. The conduct of Liger6 will lead potential customers to incorrectly assume that it is still the source for products manufactured by the Sarto Entities. Liger6 argues in response, without more, that it had previously conducted itself with the consent of the Sarto Entities. (See dkt. 84 at 9.)

This Court finds that Liger6 has failed to rebut the prima facie showing by the Sarto Entities of entitlement to summary judgment on the claims and counterclaims concerning unfair competition. Therefore, this Court will grant the part of the motion concerning (1) the claims for unfair competition under the common law and state law, and (2) the counterclaims for unfair competition under federal law and the common law.

**D.    Tortious interference claim**

Liger6 asserted in this claim that the Sarto Entities interfered with its separate contract with Krebs to sell products bearing the SARTO mark in the United States by inducing him to not perform that contract, and to deal directly with the Sarto Entities in selling their products. (See dkt. 1 at 11.) The Sarto Entities explicitly seek summary judgment in their favor on this claim. (See dkt. 81-1 at 23–24; dkt. 92 at 16–17.) Liger6 provides no argument in response to this part of the motion at all. (See generally dkt. 84.) But the Sarto Entities are not automatically entitled to summary judgment on this claim simply because Liger6 did not oppose this part of the motion. See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). Instead, this Court may grant this relief only if the Sarto Entities are entitled to judgment as a matter of law. Id.; Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F.Supp.2d 425, 431 (D.N.J. 2001) (stating that if nonmovant fails to oppose an argument made in support of summary judgment by written objection, memorandum, affidavits and other evidence, then all material facts set forth by the movant with appropriate support will be accepted as true).

A tortious interference claim requires: (1) the existence of a contract; (2) intentional or malicious interference; (3) the loss of that contract due to the interference; and (4) damages. See Barows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347, 368 (D.N.J. 2006). Here, the Sarto Entities argue that Liger6 has not provided any evidence that it actually had a contract with Krebs. See Woods Corporate Assocs. v. Signet Star Holdings, Inc., 910 F.Supp. 1019, 1031

(D.N.J. 1995) (stating valid contract must exist to support tortious interference claim). The Sarto Entities argue that Liger6 has failed to demonstrate that it ever had a contract with Krebs. (See dkt. 81-1 at 23.) Liger6 offers nothing in response to this argument, and this Court has not been able to find any proof of a contract in the record here. Because no genuine issue of fact has been raised concerning the first element — the existence of a contract — this Court will grant the part of the motion concerning the tortious interference claim.[4]

### E. Counterclaims for common law trademark infringement and common law trade name infringement

The Sarto Entities properly asserted counterclaims concerning infringement under the common law in 2013, even though they had not yet been declared to be entitled to register as the sole owners of the SARTO mark with the USPTO. See B&B Hardware, Inc. v. Hargis Indus., Inc., 135 S.Ct. 1293, 1305 (2015) (stating "registration is not a prerequisite to an infringement action").

The analysis applied for addressing the viability of claims for trademark infringement and trade name infringement is the same as the analysis applied to a claim for unfair competition. See Buying For The Home, LLC v. Humble Abode, LLC, 459 F.Supp.2d 310, 317 (D.N.J. 2006) (concerning trademark infringement); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 374 (D.N.J. 2002) (concerning trademark infringement); Suncoast Tours, Inc. v. Lambert Grp., Inc., No. 98-5627, 1999 WL 1034683, at *2 (D.N.J. Nov. 10, 1999) (concerning trade name infringement). This Court has already determined that the Sarto Entities are entitled to summary judgment on their counterclaims for unfair competition under federal law. See

---

[4] The Sarto Entities argue that "Krebs filed a motion to dismiss . . . and the court granted the motion in part because [Liger6] could not prove that Krebs had ever entered into an agreement with [Liger6]." (Dkt. 81-1 at 23.) But it appears, upon this Court's review of the docket, that the claims asserted against Krebs were dismissed by stipulation before the motion to dismiss filed by Krebs was addressed. (See dkt. 7 (motion to dismiss filed by Krebs); dkt. 18 (stipulation of dismissal).) This Court will disregard this particular argument.

supra. It thus follows that the Sarto Entities are entitled to summary judgment on these counterclaims as well. Therefore, this Court will grant the part of the motion concerning the counterclaims for trademark infringement and trade name infringement.

### F. Cybersquatting counterclaim

The conduct of Liger6 in continuing to maintain the sartocycles.com website — even though Liger6 no longer sells any products manufactured by the Sarto Entities, and even though the Sarto Entities have terminated their business relationship with Liger6 — is indicative of bad faith on the part of Liger6. See 15 U.S.C. § 1125(d)(1)(A); CSC Holdings, LLC, 731 F.Supp.2d at 408–09. Furthermore, this Court has determined that the Sarto Entities are entitled to register as the sole owners of the SARTO mark with the USPTO, and that the counterclaims concerning false designation of origin, unfair competition, and trademark and trade name infringement will be resolved in favor of the Sarto Entities. The use by Liger6 of the sartocycles.com domain name will inevitably confuse consumers into believing that Liger6 sells products manufactured by the Sarto Entities. The conduct exhibited by Liger6 by its insistence on continuing to maintain the sartocycles.com website is at best befuddling, and at worst an egregious example of bad faith designed to browbeat the Sarto Entities into an agreement. Therefore, this Court will grant the part of the motion concerning the cybersquatting counterclaim.

### G. Counterclaim for common law right of publicity

To demonstrate a claim for a violation of the common law right of publicity, a party must show that: (1) it owns an enforceable right in the identity or persona of the person at issue; (2) the identity is being used without permission in an identifiable way; and (3) the use is likely to damage the commercial value of that identity. See Prima v. Darden Rests., Inc., 78 F.Supp.2d 337, 349 (D.N.J.2000).

Here, Liger6 continues to use the names, photographs, and background information of Antonio Sarto and Enrico Sarto on the sartocycles.com website for commercial purposes, even though Liger6 is no longer connected to the Sarto Entities and no longer sells products manufactured by the Sarto Entities. This is a clear violation of the common law right to publicity. Therefore, this Court will grant the part of the motion concerning the right of publicity counterclaim.

### IV.  Parts of the motion to be denied

#### A.  Conversion claim

The Sarto Entities move for summary judgment in their favor concerning the conversion claim. (See dkt. 81-1 at 21 (mentioning Count VIII); see also dkt. 84 at 6 (Liger6 referring to that part of the motion).) But the conversion claim is asserted against Krebs only. (See dkt. 1 at 12.) The parties have already stipulated to the dismissal of all claims asserted against Krebs (see dkt. 18), and thus this claim is moot. Therefore, this Court will deny this part of the motion without prejudice, and dismiss the conversion claim as being moot.

#### B.  Claims for breach of contract and for breach of implied covenant of good faith and fair dealing

The claims for breach of contract and for breach of the implied covenant of good faith and fair dealing are intertwined, and will be addressed together. Liger6 alleges that it had an enforceable oral contract with the Sarto Entities concerning the manufacture, distribution, and sale of bicycle products in the United States; that Liger6 performed its obligations; that the Sarto Entities failed to perform their obligations; and that the Sarto Entities benefited from the efforts of Liger6 to promote their products. Liger6 has raised issues of fact that require denial of the part of the motion addressing these claims. As to the claim for breach of contract, Liger6 correctly points out that a contract need not be expressed in writing if the parties agree to perform in a certain way when they are under no obligation to do so, and then actually undertake

15

that performance. See West v. IDT Corp., No. 01-4372, 2008 WL 762459, at *4–5 (D.N.J. Mar. 19, 2008); Marilyn Manson, Inc. v. N.J. Sports & Exposition Auth., 971 F.Supp. 875, 888 (D.N.J. 1997). A contract may be: (1) express, including oral or written; (2) implied in fact; or (3) implied in law. See Scagnelli v. Schiavone, 538 Fed.Appx. 192, 193 (3d Cir. 2013). A contract is considered to be express if the agreement is manifested in written or spoken words, and implied in fact if the agreement is manifested by the conduct of the parties. Id. Liger6 also correctly points out that the existence of an oral agreement between parties is not foreclosed while the provisions of a written contract are being negotiated by those parties. See West, 2008 WL 762459, at *4.

The Sarto Entities attempt to characterize their relationship with Liger6 as merely that of customer to salesperson. (See dkt. 84-15; dkt. 84-16.) However, Liger6: (1) actively promoted and marketed products manufactured by the Sarto Entities at great expense; (2) suggested designs to the Sarto Entities; (3) attended trade shows and found customers on behalf of the Sarto Entities; and (4) initially set up a website with the approval of the Sarto Entities to promote products in the United States that were manufactured by the Sarto Entities, used a designer and a photographer recommended by the Sarto Entities themselves, and shared in the cost with the Sarto Entities in developing the website. (See dkt. 84 at 7–8; dkt. 84-1 at 4; dkt. 84-16 at 32–34.) Furthermore, Liger6 alleges that the relationships that the Sarto Entities currently have with dealers in the United States were cultivated by Liger6. (See dkt. 84-17 at 11.)

Liger6 engaged in this activity with the knowledge and support of the Sarto Entities, and the Sarto Entities did not nothing to dissuade Liger6 until their business relationship ended in 2013. Liger6 continued to send proposed contracts to the Italian counsel for the Sarto Entities, and that counsel continually suggested revisions to those proposed contracts, thereby indicating that the business relationship was ongoing. Furthermore, Enrico Sarto admitted that Liger6 came

up with designs for products to be marketed in the United States. (See dkt. 84-16 at 26–28.) Also, Enrico Sarto attended a trade show with Bonelli as late as 2013. Thus, issues of fact remain as to whether the Sarto Entities assented to the conduct of Liger6 in promoting their products, thereby giving rise to a contract.

Furthermore, there are issues of fact raised here based on inconsistent deposition testimony provided by Antonio Sarto and Enrico Sarto. When Antonio Sarto was asked if he was aware of the extent of the efforts of Liger6 to promote products made by the Sarto Entities or to negotiate a written agreement, he responded that Enrico Sarto handled such matters with Liger6. (See dkt. 81-8 at 99; dkt. 84-15 at 41, 47, 53–54, 57–59.) But when Enrico Sarto was asked about the extent of the efforts of Liger6, he responded that Antonio Sarto handled those matters. (See dkt. 84-16 at 14, 22–23, 66–67.)

This Court, in permitting the breach of contract claim to proceed at this time, will permit the implied covenant claim to proceed as well, because the implied covenant of good faith and fair dealing is inherent to a contract. See Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Surgery Ctr., No. 12-5941, 2014 WL 2601972, at *4 (D.N.J. June 11, 2014); see also Paul Germann & Assocs. v. Specialty Food Mgmt. Grp., LLC, No. 11-1399, 2013 WL 1288208, at *9 (D.N.J. Mar. 27, 2013) (denying motion for summary judgment concerning breach of contract and implied covenant claims, and noting that a party could be both in breach of contract and acting in bad faith toward another party); see also Asta Funding, Inc. v. Your Wellbeing, LLC, No. 11-2202, 2014 WL 3844797, at *8 (D.N.J. Aug. 5, 2014) (denying summary judgment on implied covenant claim based upon denial of summary judgment on breach of contract claim, because the implied covenant claim "may depend on the existence and scope of the contract").

### V. Request for an award of costs and fees

The Sarto Entities seek an award of costs and fees. (See dkt. 81-1 at 6.) This Court will utilize the discretion to refrain from determining whether the Sarto Entities are entitled to such an award until all of the remaining claims have been resolved.

### CONCLUSION

For the aforementioned reasons, this Court will grant the motion insofar as it concerns all of the claims asserted in the complaint and the Counterclaims In Issue, with the exception of the breach of contract claim, the claim for breach of the implied covenant of good faith and fair dealing, and the conversion claim. This Court will enter an appropriate order and judgment.

_____
JOSE L. LINARES
United States District Judge

**Dated:** August __10__, 2016