Eric Adam Biderman
biderman.eric@arentfox.com
ARENT FOX, LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Attorneys for Defendants
and Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIGER6, LLC,<br><br>　　Plaintiff/Counterclaim Defendant,<br><br>　　-against-<br><br>SARTO ANTONIO and SARTO S.r.l.,<br><br>　　Defendants/Counterclaim Plaintiffs. | Civil Action No. 2:13-cv-04694-JLL-JAD<br><br>Hon. Jose L. Linares<br><br>**MOTION DAY:  MARCH 20, 2017**<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I. **FACTS** ...................................................................................................................1

II. **LEGAL ARGUMENT** .......................................................................................6

III. **CONCLUSION** ..................................................................................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bolden v. Mayberry,*
 No. 09-cv-312, 2012 WL 777276 (S.D. Ind. Mar. 8, 2012) ................................................. 7, 8

*Brown v. Wisconsin Department of Corrections*,
 No. 15-cv-843, 2017 WL 280716 (E.D. Wis. 2017) ....................................................... 6, 7, 8

*Liger6, LLC v. Antonio,*
 No. 13-cv-4694, 2016 WL 4257762 (D.N.J. Aug. 10, 2016) ............................................... 1, 3

*Voelkel v. General Motors*,
 846 F. Supp. 1482 (D. Kan. 1994) .................................................................................. 6, 7, 8

*Voelkel v. General Motors,*
 43 F.3d 1484 (10th Cir 1994) ................................................................................................... 6

Defendants Antonio Sarto and Sarto S.r.l. (collectively "Sarto" or "Defendants") hereby move for leave to file a motion for summary judgment on the new breach of oral contract claim[1] that was identified for the first time in the draft pretrial order prepared by Liger in December 2016 and on Liger's claim for breach of the implied covenant of good faith and fair dealing. Sarto had no chance to address this claim in its motion for summary judgment. Liger either concealed this claim or it invented it at the eleventh hour on the eve of trial. In any event, it is a claim that can readily be disposed of through summary judgment motion and neither Sarto nor the Court should waste time on a jury trial without first giving Sarto the opportunity to move for judgment first.

I. **FACTS**

Liger's complaint in this action (the "Complaint") alleged four counts relating to its alleged claim of ownership of the SARTO mark (Counts I-IV), a claim for Tortious Interference with Contract (Count (VI), a claim for Conversion (Count VIII), and two additional counts captioned merely "Breach of Contract" (Count V) and "Breach of Implied Covenant of Good Faith and Fair Dealing" (Count VII"). *See* Complaint [D.E. 1], ¶¶ 44-79.

The Court granted summary judgment dismissing Counts I-IV, VI and VIII but found an issue of fact precluding summary judgment on the breach of contract and breach of implied covenant claims. *See Liger6, LLC v. Antonio*, No. 13-cv-4694, 2016 WL 4257762, at *4-*9 (D.N.J. Aug. 10, 2016).

Liger's Complaint provided no information whatsoever as to the nature of the alleged "oral agreement" that Sarto has supposedly breached. Count V of the Complaint merely stated

---

[1] Plaintiff/Counterclaim Defendant Liger6, LLC ("Liger") stated for the first time in its draft pretrial order that Sarto had breached an oral "exclusive distribution agreement,." by terminating it after Liger had invested money promoting the SARTO mark in the U.S..

1

"Liger and Defendant SA were parties to a binding and enforceable contract relating to the manufacture, distribution and sale of bicycle products under the SARTO mark in the United States." Complaint, ¶ 60. The Complaint did not specify what either parties' obligations were under the supposed contract. As a result, when Sarto filed its motion for summary judgment [D.E. 81, 85] (the "MSJ"), it had no way of knowing what specific contractual obligation it had allegedly breached.

Liger never alleged that Sarto had breached an "exclusive distributorship agreement" in the Complaint, in any response to written discovery requests, in any document produced in discovery, in the summary judgment briefs for the MSJ, in any of the declarations submitted with MSJ, or in any question posed during the depositions of Antonio or Enrico Sarto. Moreover, Liger's owner characterized his alleged relationship with Sarto as a partnership, not "an exclusive distributorship agreement."

By contrast, the documents produced in discovery, including Liger's own proposed trial exhibits refute the alleged existence of such an agreement.

Sarto attempted to ascertain the nature of the oral contract through written discovery and the deposition. However, Liger provided no meaningful information as shown by Liger's response to Sarto's Interrogatory 13, attached hereto as Exhibit A

> INTERROGATORY 13: Identify all agreements relating to any mark containing the word SARTO to which Plaintiff has ever been a party.
>
> ANSWER: Liger incorporates the general objections as set forth above; and further objects on the grounds that this interrogatory is overly broad and burdensome. Further Liger objects on the grounds to the interrogatory on the grounds that it seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it seeks information that is protected by the attorney client privilege. Subject to and without waiving any objections**, Liger will produce such agreements as may exist** at a mutually agreeable place and time pursuant to Fed. R. Civ. P. 33(d).

2

*See* Declaration Of Eric Adam Biderman In Support Of Defendants' Motion For Leave To File A Motion For Summary Judgment ("Biderman Decl."), Exhibit ("Exh.") A (emphasis added).

The fact that Liger never alleged that it has an oral "exclusive license agreement" in response to this interrogatory should preclude it from alleging the existence of any such agreement now.

Liger provided a similarly evasive answer to Request No. 2 of Sarto's First Request for Production of Documents:

> REQUEST NO. 2  All Documents relating to any agreement between the parties to this action, including without limitation the alleged agreement referred to in Paragraphs 9 and 10 of Plaintiff's complaint herein.
>
> ANSWER:  Liger objects to this request on the grounds that it is overly broad, unduly burdensome and seeking evidence that is irrelevant and not reasonably calculated to lead to the discovery of relevant evidence.  While giving no assurance that it can or will produce all such documents and things, Liger will produce non-privileged documents that are reasonably responsive to this request.

Biderman Decl., Exh. B.

Liger produced several drafts of an exclusive distributorship agreement and extensive correspondence between Marco Bonelli ("Bonelli") and Enrico Sarto and the parties' Italian attorneys relating to Liger's request for an exclusive distributorship.  Had any oral agreement existed, it is reasonable to expect that Bonelli or his lawyer would have mentioned it at least once in the correspondence.  However, there is not a single document referring to any pre-existing oral distributorship agreement.

By contrast, there are several agreements that directly contradict Liger's new claim.  In an email to Enrico Sarto dated September 3, 2012, which is Exhibit 11 of Sarto's Trial Exhibits, Bonelli admitted that the parties had never reached an agreement stating that:

> "What has emerged has notably reinforced my absolute conviction that it is urgently necessary:
> 1. To decide whether to go forward in this enterprise.
> 2. Discuss a new agreement in as much as those discussed up to now have been partial and/or inadequate.
> 3. **If we ever reach such agreements** it is urgently necessary that they be formalized in a written contract.

Biderman Decl., Exh. C (emphasis added).

Similarly, In an email dated January 31, 2013, which is Exhibit 27 of Sarto's Trial Exhibits, Bonelli admitted that he was waiting for "**a definitive contract. . . up to now never finalized, notwithstanding our intentions** . . . " Biderman Decl., Exh. D (emphasis added).

In addition, in Paragraph III of the first draft of the proposed exclusive distributorship agreement prepared by Liger nearly a year after he first contacted Sarto, Liger characterized the parties' relationship not as an exclusive distributorship but as "a commercial collaboration." *See* Biderman Decl., Exhibit E at 1 (¶ III), 11 (¶ III).

Liger has never identified any duties it assumed as part of any oral exclusive distributorship, such as specific minimum sales levels, minimum advertising and promotion efforts, duration of the arrangement, obligations to refrain from claiming rights in Sarto's intellectual property or other minimal commitments that a reasonable business person would require in order to grant such an exclusive agreement.

However, Liger's first draft of the proposed agreement, it proposed a minimum sales guarantee of 200 frames. *See* Biderman Decl., Exh. E at 5 (Article 4), 15 (Article 4). Liger's first draft of the proposed agreement also proposed a two-year contract term by stating, in relevant part, as follows: "L'efficacia del presente contratto decorre dal giorno della sua sottoscrizione e avrà durata di due anni dalla data iniziale, con esclusione del suo rinnovo tacito

4

alla scadenza." However, after two and one half years of attempting to sell SARTO frames, Liger had sold less than 80 frames in the U.S.

Liger also failed to show any agreement on the part of Sarto to compensate Liger for any promotional expenses. In fact, all of the draft agreements prepared by Liger stated that it would be responsible for all advertising and promotion costs.

Liger's owner Bonelli was asked about the parties' relationship in his deposition. However, he never characterized it as an "exclusive distributorship." Instead he referred to it as a partnership.

> Q. How long did you rent that space?
>
> A. More or less for the period I had dealings or I was a partner with Sarto.
>
> . . .
>
> Q. Were you ever a partner with Antonio Sarto?
>
> A. In the substance yes, absolutely yes, not formally.
>
> . . .
>
> Q. If Sarto Antonio sold bicycle frames to someone . . . you did not get any share of that income, did you?
>
> A. Correct, also because our partnership was limited to the United States.

Biderman Decl., Exh. F (February 11, 2016 Deposition of Marco Bonelli) ("Bonelli Dep.")) at 16: 7-11, 18-20; 17: 6-7, 11-14.

Bonelli also admitted in the deposition that he had none of the attributes of a partner in that he had no right to sign on behalf of Antonio Sarto and no right to share in any income. Biderman Decl., Exhibit F (Bonelli Dep.) at 16:22 – 17:14.

5

At the time of the MSJ, Sarto assumed that the oral agreement referenced in the complaint was an alleged agreement to share ownership of the mark. In response to Sarto's MSJ, however, Liger did nothing to clarify the nature of the alleged oral agreement or the obligations to which they allegedly agreed, and made no reference whatsoever to any oral "exclusive distributorship agreement." Rather, in its opposing brief, Liger merely repeated the vague assertion in its complaint that "Liger and Defendant SA [Sarto] were parties to a binding and enforceable contract relating to the *manufacture, distribution, and sale of bicycle products* under the SARTO mark in the United States." *See* Memorandum Of Law In Opposition To Motion For Partial Summary Judgment Of Defendants/Counterclaimants Sarto S.R.L. And Sarto Antonio [D.E. 84] ("MSJ Opp. Br.") at 6.

## II.  LEGAL ARGUMENT

While the parties are ordinarily required to file summary judgment motions by the deadline set by a court, courts have granted exceptions to that rule. *See Brown v. Wisconsin Department of Corrections*, No. 15-cv-843, 2017 WL 280716 (E.D. Wis. 2017); *Voelkel v. General Motors*, 846 F. Supp. 1482 (D. Kan. 1994), *aff'd*, 43 F.3d 1484 (10th Cir 1994). In particular, courts demonstrated a willingness to allow a party leave to file an additional summary judgment motion where a decision on such additional motion would avoid the cost and expense of an unnecessary trial, or where such additional motion will not prejudice the non-moving party, will not cause the court to make any additional factual findings and won't delay the trial of the case. *See Voelkel,* 846 F. Supp. at 1484; *Brown,* 2017 WL 280716, at *2.

In *Voelkel,* the court granted the defendant leave to file a summary judgment motion even though the court had partially granted a summary judgment motion previously filed by the defendant. *Voelkel,* 846 F. Supp. at 1483-1484. The defendant sought reconsideration regarding

6

the court's denial of the portion of the defendant's original summary judgment motion that concerned he plaintiff's claim for breach of express warranty. *Id.* The court initially recognized that the defendant's motion for reconsideration was, in fact, a new motion for summary judgment, as the defendant did not argue that the court had misapprehended the law or the facts on the defendant's original summary judgment motion, and the "newly discovered evidence" cited by the defendant was "nothing that the defendant did not know or could not have known through diligent efforts before filing its original motion for summary judgment." *Id.* Nonetheless, the court held that the defendant was permitted to file an additional summary judgment in order to squarely address the plaintiff's claim for breach of express warranty for the first time on a summary judgment motion:

> Despite its procedural problems, the defendant's motion is convincing on the substantive issues. The motion puts the plaintiff on notice to come forth with all of his evidence on the express warranty claim. In his response to the motion, the plaintiff purports to do so. **By deciding this motion, the cost and expense of an unnecessary trial is avoided**. For these reasons, the court grants the defendant leave to file this new motion for summary judgment.

*Voelkel*, 846 .F Supp. at 1484 (emphasis added).

Similarly, in *Bolden v. Mayberry,* No. 09-cv-312, 2012 WL 777276 (S.D. Ind. Mar. 8, 2012), the court allowed a defendant to file a new summary judgment motion recognizing that "[i]f, in fact, [the defendant] has meritorious arguments that he failed to present the first time around but which entitle him to summary judgment, **it would, of course, be the most efficient course of action to review those arguments now rather than proceed with a fruitless trial**." *Bolden,* 2012 WL 777276, at *1 (emphasis added).

In *Brown,* the court allowed one of the defendants to file supplemental arguments in connection with a motion for summary judgment of that defendant that the court had previously

7

ruled on. *Brown,* 2017 WL 280716 at *2. Specifically, the defendant sought to file additional summary judgment arguments to address, *inter alia,* one of plaintiff's claims that the defendant did not clearly address, if at all, in its original summary judgment motion. *Id.* The court granted the defendant's request for leave to file supplemental arguments in connection with her original summary judgment motion finding that "the court does agree that the plaintiff will not be prejudiced by the supplemental arguments, that those arguments don't cause the court to have to make any additional factual findings, and that they won't delay the trial of the case." *Id.*

Here, the facts strongly support granting Defendants leave to file a second a summary judgment motion to address Liger's new alleged breach of contract claim. As in *Voelkel* and *Bolden,* allowing the Defendants to file an additional summary judgment, in order to present arguments and evidence regarding Liger's breach of contract claim, would be the most efficient course of action because it would allow the court to properly review such claim now and potentially avoid the unnecessary time, cost and expense of a trial on the claim. The above-described evidence, if briefed on summary judgment, would seemingly be sufficient to allow the court to award summary judgment in Defendants' favor on Liger's breach of contract claim *before* having to proceed with a trial regarding such claim.

Moreover, as in *Brown,* granting the Defendants leave to file an additional summary judgment will not delay the trial in this case, as the Court has not even set a trial date. Given the Court's schedule, it seems very possible that there will be ample time for briefing and a decision on an additional summary judgment before any trial date in this action. As noted, if the Court concludes as the evidence shows that there is no genuine issue of fact, the granting of Defendants' motion will save the court considerable time and expense.

Finally, it does not appear that Liger would be prejudiced if Defendants are granted leave to file an additional summary judgment motion. In its MSJ Opp. Br., Liger, as it did in its Complaint, made the vague assertion that Defendants and Liger were parties to an enforceable contract, without specifying whether that contract was written or oral. MSJ Opp. Br. at 6. Thus, the issue of whether Defendants and Liger entered into an enforceable *oral* contract was clearly not addressed by Liger in its summary judgment briefing, and, as such, an additional summary judgment motion will represent the first time that Liger would have to address the issue on summary judgment. Liger will not have to brief an issue that it already briefed in connection with Defendants' original summary judgment motion. Rather, Liger will be briefing an issue that it would had to have briefed in connection with Defendants' original summary judgment motion had nature of the alleged oral agreement between the parties been made clear at the time Defendants filed such motion.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court grant Defendants' Sarto Antonio and Sarto S.r.l. leave to file an additional motion for summary judgment.

Dated:   February 13, 2017

Respectfully submitted,

**ARENT FOX LLP**

By:   /s/ Eric Adam Biderman
Eric Adam Biderman
biderman.eric@arentfox.com
1675 Broadway
New York, New York  10019
Telephone: (212) 484-3900
Facsimile:  (212) 484-3990

Michael A. Grow (*admitted pro hac vice*)
grow.michael@arentfox.com
1717 K Street, NW
Washington, DC  20036
Telephone: (202) 856-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants/Counterclaim Plaintiffs Sarto Antonio and Sarto S.r.l.*