# Arent Fox

Arent Fox LLP / Attorneys at Law
Los Angeles, CA / New York, NY / San Francisco, CA / Washington, DC
www.arentfox.com

March 27, 2017

**VIA ECF**
Hon. Judge Joseph A. Dickson, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Eric Biderman**
Counsel
212.457.5439 DIRECT
212.484.3990 FAX
eric.biderman@arentfox.com

**Reference Number
034859.00002**

Re: *Liger6 LLC. v. Sarto Antonio, et al.*, Case No. 2:13-cv-04694-JLL-JAD

Dear Judge Dickson:

As you are aware, this firm represents Defendants/Counterclaim Plaintiffs Sarto Antonio and Sarto, S.r.l. (collectively, "Sarto" or "Defendants") in the above-referenced action currently pending before Your Honor and Hon. Joseph Linares, U.S.D.J. Pursuant to the pre-trial conference on February 28, 2017, we are writing on behalf of Sarto concerning our request that Plaintiff/Counterclaim Defendant Liger6 LLC ("Liger" or "Plaintiff") produce documents concerning sales of component parts and equipment it made following its decision to cease purchasing products from our clients, Antonio Sarto and Sarto S.r.l. in March 2013 and while it was still using the www.sartocycles.com website. During his deposition, Liger's owner Marco Bonelli conceded: (1) after Liger stopped selling SARTO products it still had an inventory of bicycle parts (*see* attached Exhibit A (February 11, 2016 Deposition of Marco Bonelli ("Bonelli Dep.")) at 19:11-16); (2) Liger continued selling this inventory along with bicycles bearing the mark PALLADIO (*Id.* at 18:19 -- 19:19); and (3) Liger was still using the www.sartocycles.com website after 2013 while these sales were being made and it received communications through the site. *Id.* at 36:16-22 -- 37:11. In fact, the site remained active until recently when Liger converted it to contain click-through links to advertisements placed by competitors of Sarto.

In connection with the preparation of the pretrial order, Sarto asked Liger to supplement its production by producing documents relating to the sale of products after March 2013. Liger has refused to do so, even though Sarto supplemented its production in response to a similar request from Liger. When Sarto raised this issue at the last pretrial conference, the Court indicated that Sarto could write a letter explaining the basis for its request.

The requested information is relevant and essential to Sarto's defense to Liger's damage claim in this case. It also relates to Sarto's own damage claims. Liger bases its oral breach of contract claim on the new allegation that it had an oral exclusive distributorship agreement and that Sarto somehow breached the agreement and that Liger lost money. All of these claims are demonstrably

**Arent Fox**

Hon. Joseph A. Dickson, U.S.M.J.
March 27, 2017
Page 2

false and can be resolved if the Court grants Sarto's pending motion for leave to file a motion for summary judgment on the new claim.

In the Trial Exhibits submitted with pretrial order Liger attached as Exhibits 69, 73, 74, 75 certain alleged "Financial Summaries" purporting to show costs it had incurred and losses that it had allegedly sustained for the years 2010, 2011, 2012 and 2013, when it was selling products made by SARTO. The summary for 2011 was submitted as Exhibit 2 to the Declaration Of Cristina Martinez In Support Of Plaintiff's Opposition To Defendants' Motion For Leave To Join Marco Bonelli As A Defendant To Defendants' Counterclaims [D.E. 118-1] ("Martinez Decl."). These summaries are misleading in many respects because they include a number of inappropriate expenses that should not have been charged in calculating losses  The largest of these is for money allegedly spent on acquiring saleable assets, namely, "equipment and components," most if not all of which were acquired from entities other than Sarto. The cost of these items is substantially higher than the revenue allegedly received by Liger and the sale of these items is not reflected in the alleged income shown in the summaries.  It is evident from Bonelli's testimony that he recouped some and possibly all of the costs for the parts and equipment listed in the Financial Summaries through sales of individual parts or as components of bicycles that he sold after 2013 but while he was still trading under the www.sartocycles.com website.  As a result, Liger should produce documents relating to all post-March 2013 sales or be barred from including the cost of these items in any exhibit.  There are other grounds for objecting to the exhibits as well, which are not addressed in this letter.

In Request No. 35 of its First Request For The Production Of Documents And Things in this action (the "Requests" excerpts from which are attached as Exhibit B), Sarto asked Liger to produce all sales reports, financial statements, or other documents referring to the amount of revenue derived by Plaintiff from the sale of any product or service offered under any mark containing the word SARTO, from the date of first use to the present.

Section 45 of the Trademark Act, 15 U.S.C. 1127, defines use of a mark as follows:

"Use in commerce. The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce— (1) on goods when— (A) it is placed in any manner on the goods or their containers **or the displays associated** therewith or on the tags or labels affixed thereto." (emphasis added).

Liger's website at www.sartocycles.com was its primary marketing tool and Liger's display of SARTO on that website is "a display" within the meaning of the above referenced statute. Liger never had any other website and it was still using the site when it sold the parts and bicycles referenced in the deposition. It also received communications through the site.  In fact, Liger used the email address info@sartocycles.com on emails that it sent.  Liger never sought to register the

**Arent Fox**

word "Liger" as a trademark and never had an email address that used the domain name liger.com, nor did it ever advertise this name. Both before and after the Liger stopped doing business with Sarto, Liger used the mark SARTO as its primary trade identity. In fact, it was still claiming to own the SARTO mark at the time the court granted summary judgment in Sarto's favor on August 16, 2016 and it is still using the website today. Thus, any sales made by Liger while the site was active are sales made "under the SARTO mark," regardless of whether the word SARTO appeared on products sold or not. Accordingly, Liger should be required to supplement its production of documents by providing invoices or other financial records showing sales of any bicycles or bicycle components after March 2013.

In Request No. 60 of the Requests, Sarto asked Liger to produce representative samples of documents referring or relating to bicycles or bicycle frames marketed or sold by Plaintiff or Marco Bonelli under marks other than SARTO or SARTO ANTONIO from 2005 to the present. (See Exhibit B).

To the extent Liger sold bicycle components or bicycles after March 2013, Liger should supplement its response to this request to include documents relating to such sales.

*****

A dispute also has arisen regarding the subpoena served by Sarto on Network Solutions on March 13, 2017, pursuant to permission granted by the court at the last pretrial conference. At that time, Sarto had recently discovered that Liger had modified its www.sartocycles.com site to include click-through advertisements for bicycles and frames offered by Sarto's competitors. A copy of excerpts from the revised website showing click-through advertisements is attached as Exhibit C. and Sarto wishes to add this to the its Exhibits in the Pre-Trial Order.

The ads have compounded the confusion and damage caused by Liger's prior acts allowing prospective Sarto customers to be diverted to competitors. In its opinion dated August 16, 2016, finding Liger liable for cybersquatting, the Court held "The use by Liger6 of the sartocycles.com domain name will inevitably confuse consumers into believing Liger6 sells products manufactured by the Sarto Entities. The conduct exhibited by Liger is at best befuddling, and at worst is an egregious example of bad faith designed to browbeat the Sarto Entities into an agreement."

On receipt of the subpoena, Liger's attorney sent an email to Network Solutions objecting to the subpoena and the custodian replied that it would not produce documents in view of the objection. Sarto agreed to amend the subpoena to overcome Liger's objections. Sarto has narrowed the scope of documents contained in the subpoena. However, despite several attempts to reach an agreement, Liger still objects. Sarto's subpoena with a revised document list is attached as Exhibit D.

# Arent Fox

Hon. Joseph A.
Dickson, U.S.M.J.
March 27, 2017
Page 4

Based on comments made by the Court during the last pretrial conference, Liger contends that Sarto is only entitled to ask for documents created no earlier than the time period beginning as of when the website was parked to present and that it is only entitled to ask for information relating to the identity of the person or persons who placed the advertisements, the amount of revenue generated by the advertisements and identity of those who received the revenue. Sarto believes that the date limitation is unreasonable because, if the change was ordered prior to that date, Network Solutions may not produce documents showing who made the change and it may avoid producing all documents showing how much revenue was generated and to whom it was paid. Sarto is entitled to know the date on which the site was changed to permit the display of click through links and how the change was made.

Liger knows when it changed its website but refuses to disclose that date to Sarto. Only the owner of a website can authorize a change in content and it can control the placement or deletion of advertisements. Network Solutions sites have a dashboard option of the type shown below.

If you click the standard Construction page, clickthrough advertisements will appear. If you click the generic Construction page, no advertisements appear. Marco Bonelli or someone acting on his behalf may activated the ads out of spite to divert customers from Sarto and to further commit further acts of infringement, tortious interference with Sarto's prospective business relations, and to trade on Antonio Sarto's right of publicity. If someone other than Bonelli had engaged in this conduct, Liger would not be trying to prevent the disclosure of that information.

The information is relevant to Sarto's claim for damages under its trademark infringement, unfair competition, cybersquatting, and right of publicity claims. Moreover, the fact that it occurred after the close of discovery. Accordingly, we ask that the court preclude Liger from objecting to Sarto's requests for information relating to when and how Liger changed its website.

We thank Your Honor for your consideration of this matter.

Respectfully submitted,

Eric Biderman

Enclosures

cc:   All Counsel (via ECF)