Eric Adam Biderman
biderman.eric@arentfox.com
ARENT FOX, LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Attorneys for Defendants
and Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIGER6, LLC, | Civil Action No. 2:13-cv-04694-JLL-JAD |
| Plaintiff/Counterclaim Defendant, | |
| -against- | Hon. Jose L. Linares |
| SARTO ANTONIO and SARTO S.r.l., | |
| Defendants/Counterclaim Plaintiffs. | |

## DEFENDANT/COUNTERCLAIM PLAINTIFFS SARTO ANTONIO AND SARTO S.r.l.'s BRIEF ON DAMAGES, ATTORNEYS' FEES, AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

FACTS ........................................................................................................ 1

    A.    Background Facts............................................................1

    B.    Facts Relating to Liger6's Bad Faith Relating to the Sarto Mark......4

    C.    The Court's Findings on Liger6's Acts of Cybersquatting.............6

ARGUMENT ............................................................................................. 7

    I.    The Sarto Parties are Entitled to Damages on Their Claims for Cybersquatting and Attorneys' Fees ..................................................... 7

        A.    The Sarto Parties Are Entitled to Damages for Liger6's Acts of Cybersquatting.............................................. 7

        B.    The Sarto Parties Are Entitled to an Award of Attorneys' Fees Pursuant to 15 U.S.C § 1117 ......................................... 12

        C.    The Sarto Parties Are Entitled to Injunctive Relief. ............... 15

CONCLUSION ......................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bethanie L. Mattek, LLC v. Donnay USA Ltd*,
  Civil Action No.: 13-6188(ES)(JAD), 2016 WL 6542710 (D.N.J.
  Nov. 1, 2016) ......................................................................................................... 12

*Coach, Inc. v. Bag Place, Co.*,
  Civil Action No. 10-6226 (JLL), 2012 WL 13028160 (D.N.J. May
  7, 2012) ...................................................................................................... 8, 10, 12

*Days Inn Worldwide, Inc. v. BFC Mgmt., Inc.*,
  544 F. Supp. 2d 401 (D.N.J. 2008) ..................................................................... 14

*Fair Wind Sailing, Inc. v. Dempster*,
  764 F.3d 303 (3d Cir. 2014)................................................................................. 12

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002), *amended* (June 28, 2002) ........................8

*Renna v. Cty. of Union, N.J.*
  Civ. No. 2:11-3328 KM MAH, 2015 WL 1815498 (D.N.J. Apr. 21,
  2015) ............................................................................................................... 13, 14

*Silva v. Karlsen*,
  43 F. App'x 486 (3d Cir. 2002) ........................................................................... 15

**Statutes**

15 U.S.C. § 1117 ......................................................................................................4

15 U.S.C. § 1117(a) ..................................................................................................4

15 U.S.C. § 1117(b) ..................................................................................................5

15 U.S.C. § 1117(d) ..................................................................................................2

15 U.S.C. § 1125(a) ..................................................................................................2

15 U.S.C. § 1125(d) ....................................................................................... 1, 3, 11

Defendants/Counterclaim Plaintiffs Sarto Antonio and Sarto S.r.l. ("the Sarto Parties" or "Defendants") hereby submit this Brief showing their entitlement to statutory damages in the amount of $300,000 ($100,000 each for the domain names sartocycles.com; sartobikes.com; and sartobicycles.com), for violation of the anticybersquatting statute 15 U.S.C. § 1125(d). This request for damages is made pursuant to the Court's Summary Judgment Opinion and Order dated June 3, 2016 finding Liger6 liable for cybersquatting and the post-trial order entered by the Court on February 21, 2019. The Sarto Parties also seek entry of injunctive relief and an award of costs and attorneys' fees pursuant to 15 U.S.C. § 1117.

## FACTS

### A.    Background Facts

This action was filed on August 5, 2013, by Plaintiff Liger6 LLC against Sarto Antonio, a sole proprietorship. Sarto Antonio and his successor company Sarto S.r.l. make high-tech bicycle frames and bicycles. Antonio Sarto has been in the bicycle business since at least 1950 and his company has outfitted pro-cycling teams and riders, as well as cycling enthusiasts in Italy and many other countries. E. Sarto Decl. ¶ 9 (ECF No. 81)

Plaintiff Liger6 LLC ("Liger6") is a defunct entity that failed after attempting unsuccessfully to sell SARTO products from 2010 to March 2013. In March 2013, Liger6 refused to pay for SARTO products it had ordered and,

thereafter, bought no additional SARTO products. Despite this, Liger6 continued holding itself out as a vendor of SARTO products and continued using the SARTO trademark and service mark on its website, which was linked to several domain names, including sartocycles.com, sartobikes.com and sartobicycles.com. Liger6 also allowed its www.sartocycles.com website to be used to promote bicycle products of Sarto's competitors even after the court granted summary judgment for Sarto on August 10, 2016. Motion in Limine to Allow Trial Exhibits 99, 100, and 101 and accompanying declarations and exhibits (ECF No. 157).

Liger6 alleged that Sarto Antonio's use of his own SARTO name and mark in connection with the sale of frames and bicycles warranted entry of judgment against him on the following counts (1) declaratory judgment awarding trademark ownership to Liger, (2) federal false designation of origin, false description and representation and false advertising under 15 U.S.C. 1125(a), (3) common law unfair competition, (4) unfair competition under New Jersey law, N.J.S.A. 56:4-1, and (5) breach of contract and other claims.

The Sarto Parties filed an answer with counterclaims against Liger6 containing the following counts: (1) Declaratory judgment that the Sarto Parties own the mark SARTO and that use of this mark does not violate any rights that Liger may claim, (2) unfair competition under 15 U.S.C. 1125(a), (3) common law trademark infringement, (4) common law unfair competition, (5) unfair

2

competition under N.J. STAT. ANN. § 56:4-1, (6) common law trade name infringement, (7) cybersquatting in violation of 15 U.S.C. § 1125(d), (8) tortious interference with prospective advantage, (9) trade libel, (10) breach of the covenant of good faith and fair dealing, and (11) common law violation of the right of publicity.  (ECF Nos. 14 and 42)

On June 3, 2016, Sarto filed a motion for partial summary judgment seeking dismissal of all claims contained in the Complaint ("Complaint") served by plaintiff Liger6 LLC ("Liger") in this action and judgement in favor of Sarto on Counts 1, 2, 3, 4, 6, 7, and 11 of its counterclaims. (ECF No. 81).  The motion for summary judgment was based on a number of indisputable and unrebutted facts, which were confirmed by accompanying declarations of Enrico Sarto ("E. Sarto Decl."), Andrea Maniezzo ("Maniezzo Decl."), Gianluca Fucci ("Fucci Decl.") David L. Varwig ("Varwig Declaration") and Jack Hitt ("Hitt Decl."), as well as excerpts from the depositions of Marco Bonelli ("Bonelli Dep."), Antonio Sarto ("A. Sarto Dep."), and Enrico Sarto ("E. Sarto Dep.")

On June 3, 2016, this court entered partial summary judgment in favor of the Sarto Parties on their Counterclaim Counts 1, 2, 3, 4, 6, 7, and 11, and it dismissed all of the claims in Liger's Complaint, except the breach of oral contract claim. (ECF No. 94).  The court found an issue of fact on this claim, and a jury trial was

held on January 22 to January 30, 2019.  The jury issued a verdict in favor of Sarto, and this Court entered judgment on February 14, 2014.

### B.    Facts Relating to Liger6's Bad Faith Relating to the Sarto Mark

In its Complaint, Liger6 falsely claimed that it owned exclusive rights in the mark SARTO for bicycles despite the fact that the only SARTO products it had ever sold were made by Sarto Antonio and were shipped to Liger6 for resale in the United States.  Liger6 also falsely alleged that prior to shipping these products, Sarto Antonio "had never sold products within the United States in any capacity," Complaint ¶ 9, and that Sarto Antonio "had never offered or sold products under the SARTO trademark." Complaint ¶ 10.

These were false statements, and Liger6 knew they were false at the time the statements were made.  In fact, as shown in the attached Declaration of Jack Hitt ("2019 Hitt Decl." Ex. A,) Counsel for Sarto Antonio sent a letter dated April 25, 2013 to Liger6's counsel Ken Florek together with photos of bicycle frames bearing the SARTO trademark and invoices showing that those frames had been sold by Sarto Antonio in the United States to Javelin LLC of Lake Zurich, Illinois, since at least as early as 2008.  Thus, prior to filing its complaint on August 5, 2013, Liger6 LLC had actual knowledge that its allegations were untrue.  In its motion for partial summary judgment in this case, Sarto confirmed the prior use evidence by filing declarations from Javelin's owner David L. Varwig and from

4

Enrico Sarto.   Varwig Decl. ¶ 5, E. Sarto Decl. ¶ 11.   Each of these individuals confirmed that products bearing the SARTO mark had been sold in the United States, long before Liger6 began importing SARTO products.   Sarto also presented unrebutted evidence of these facts at trial.

It is evident from the evidence filed with the summary judgment motion and the testimony at trial that Liger6 filed this action improperly solely to cause Sarto undue burden, oppression, and needless attorneys' fees.   In fact, in threatening text messages and other communications from Liger6's owner, Marco Bonelli told Antonio Sarto and his son Enrico Sarto that he would file a lawsuit for this unjust purpose.   See ECF No. 180; Sarto Trial Ex. 18.   These documents and other communications prove that Bonelli was angry because Antonio Sarto refused to sign an extraordinarily one sided, exclusive distribution agreement prepared by Liger6.   They show that Liger6 engaged in cybersquatting and filed the lawsuit in retaliation for Antonio Sarto's refusal to be pressured into an unfair deal.

The allegations in Liger6's complaint concerning its sole ownership of the SARTO trademark also were contradicted by the sworn declaration contained in trademark Application Ser. No. 85400510, filed by Liger6 in the United States Patent and Trademark Office in which it declared under penalty of perjury that Antonio Sarto was a joint owner of the SARTO mark.   Liger6 later acknowledged the falsity of the allegations in Liger6's Complaint when it acquiesced in Antonio

5

Sarto's objection to Liger6's assertion of ownership by surrendering the joint

registration for cancellation.  Liger6 then demonstrated its bad faith again by filing

new applications for registration of SARTO, declaring under penalty of perjury

that Liger6 was the sole owner of the mark.

 Liger6's trademark ownership claims were asserted in bad faith and were

completely unsupported by law or fact.  Liger6 and its owner Bonelli only began

claiming sole ownership of the SARTO mark when Sarto's lawyer Andrea

Maniezzo pointed out that the proposed exclusive distribution agreement gave

Liger6 an ownership interest in the SARTO name and mark without imposing any

minimum sales goals or other obligations on Liger6.  When Sarto refused to sign

such an agreement, Bonelli described himself as foaming with rage and he began

sending threatening and insulting emails and text messages that continued even

after he filed this groundless lawsuit as a pretext for demanding money.  See ECF

No. 180; Sarto Trial Ex. 18.

Bonelli also threatened potential witness Max Lelli to deter him from

testifying on behalf of Sarto in this case, and the threats were successful because

Lelli refused to appear. See 2019 Hitt Decl. Ex. B.

## C.    The Court's Findings on Liger6's Acts of Cybersquatting

This Court has repeatedly found that Liger6 acted in bad faith.  In its

summary judgment order, this Court noted that Liger6 continued "to maintain the

6

sartocycles.com website — even though Liger6 no longer sells any products manufactured by the Sarto Entities, and even though the Sarto Entities have terminated their business relationship with Liger6." (ECF No. 93 at 14).  It found that this conduct "will lead potential customers to incorrectly assume that it is still the source for products manufactured by the Sarto Entities." *Id.* at 11.  It then concluded that this conduct was "deceptive" and "at worst an egregious example of bad faith designed to browbeat the Sarto Entities into an agreement." *Id.* at 10, 14. These facts were confirmed at trial through the testimony of Antonio Sarto and Enrico Sarto who stated that they had never given Liger6 the right to claim ownership of the mark SARTO.  And by finding that Liger6 had failed to prove the existence of an oral contract, the jury elected not to believe Liger6's claim that Sarto Antonio had agreed to allow Liger6 to register the mark SARTO.

The Court also noted in its opinion denying Liger6's Rule 50 Motion that the Sarto Parties "presented evidence at trial" that "Plaintiff acted in bad faith by attempting to take ownership of the SARTO trademark without Defendants' knowledge." (ECF No. 224 at 6).

## ARGUMENT

### A.  The Sarto Parties Are Entitled to Damages for Liger6's Acts of Cybersquatting.

The court properly found that Liger6 engaged in cybersquatting and acted in bad faith. (ECF Nos. 93, 94).  As a result, the Sarto Parties are now entitled to

statutory damages on this claim.  This also merits an award of attorneys' fees because Liger6's bad faith makes this an exceptional case.

The Lanham Act provides that a plaintiff can elect to receive statutory damages for cybersquatting violations up to "$100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).  To determine statutory damages, courts looks to these factors:

> (1) the expenses saved and the profits reaped;
> (2) the revenues lost by the plaintiff;
> (3) the value of the [trademark];
> (4) the deterrent effect on others besides the defendant;
> (5) whether the defendant's conduct was innocent or willful;
> (6) whether a defendant has cooperated in providing particular records… to assess the value of the infringing material produced; and
> (7) the potential for discouraging the defendant.

*Coach, Inc. v. Bag Place, Co.*, Civil Action No. 10-6226 (JLL), 2012 WL 13028160, at *10 (D.N.J. May 7, 2012).  Evidence of bad faith justifies an award closer to the statutory maximum. *See, e.g.*, *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (E.D. Pa. 2002) ("[I]n light of the Defendants' *egregious acts in blatantly using Plaintiff Louis Vuitton's registered trademark* to sell counterfeit Louis Vuitton products in the exercise of my discretion, Plaintiff Louis Vuitton will be awarded damages in the amount of $100,000 for the infringing domain name.") (emphasis added), *amended* (June 28, 2002).

All of the factors relating to the amount of statutory damages to be awarded weigh in favor.  First, Liger admitted reaping profits by selling Max Lelli bicycles

and other bicycles and bicycle parts, while still using the infringing Sarto domain names on its website before and after it stopped doing business with the Sarto Parties. Walsh Decl. A (Sarto Trial Ex. 102) (Bonelli Dep. pp. 18-21. (Palladio Sales).

Second, Sarto itself has lost revenue because of the threatening letters sent to Sarto's U.S. customers by Liger's lawyers.  2019 Hitt Decl. Ex. C (Sarto Trial Ex. 72 and 102).  The cloud of uncertainty caused by the Liger6's unfounded litigation also has prevented the Sarto Parties from taking advantage of the opportunity to develop new business.   In addition, by permitting its website to be used to advertise the bicycle products of others, Liger6 diverted many prospective customers.

Third, the value of the SARTO trademark is evident from the amount of time and money Liger6 has spent in litigating this matter and the fact that the SARTO mark has been in use for many decades.

Fourth, there is a need to send a strong message to vendors like Liger6 who seek to misappropriate the trademark rights of their foreign manufacturers to deter them from engaging in such conduct in the future.  A maximum damage award will discourage others who may be tempted to employ the same scheme used by Liger6.  A smaller damages award will not deter other individuals similar to Mr.

Bonelli.  They will see it as a calculated risk worth the potential payoff from making another family company compensate them for their minimal efforts.

Fifth, Liger6's conduct was not innocent.  It continued holding itself out as the owner of the SARTO mark long after it stopped selling SARTO products, and it used its www.sartocycles website to interfere with the Sarto parties sale of genuine goods.  Liger6 also filed contradictory claims of ownership in the Patent and Trademark Office and made false representations in its pleadings concerning Sarto Antonio use of and prior rights in the SARTO mark in the United States.

Sixth, Liger6 withheld records sought in discovery regarding the sale of products it had in inventory after March 2013, and it tried to claim the value of that inventory as an expense in the damage claim it presented on its alleged breach of oral contract claim at trial.  This also prevented the Sarto Parties from making a damage calculation on some of the other claims on which they prevailed.

Seventh the granting of a maximum award will deter Liger6 and its owner Bonelli from engaging in any such deceitful conduct in the future.  Liger6 and Mr. Bonelli will have an incentive to repeat their fraudulent activities if they are not required to pay for their actions, and they may seek out another victim to exploit.

Liger6's use of the mark online also increased the "potential for unbridled infringement." *See Coach, Inc. v. Bag Place, Co.*, Civil Action No. 10-6226 (JLL), 2012 WL 13028160, at *10 (D.N.J. May 7, 2012).  Liger6 did not use the SARTO

10

mark in a single store but instead used it to promote all of his goods online where thousands of potential Sarto customers were redirected to his goods instead of the official Sarto cite.

In view of the foregoing facts, the Sarto Parties seek statutory damages of $300,000: $100,000 for each of the three domain names that Liger6 registered and continued using as links for its website, even after it stopped purchasing products from SARTO: **sartocycles.com, sartobikes.com and sartobicycles.com** See 2019 Hitt Decl. And while the www.sartocycles.com website was the primary website that Liger6 used, the Anticybersquatting provisions of the Lanham Act do not distinguish between registration and use. *See* 15 U.S.C. § 1125(d)(1)(A).

The Court should award this highest possible amount because, it "knowingly infringed" Antonio Sarto's mark by continuing to sell products, maintaining the www.sartocycles.com website displaying images of Antonio Sarto, and using the SARTO mark after terminating its relationship. In addition, as the court previously noted, and as was shown at trial, Liger6's cybersquatting actions were "an egregious example of bad faith designed to browbeat the Sarto Entities into an agreement." (ECF No. 93). Thus, the Court should award the maximum statutory damages allowed.

**B.   The Sarto Parties Are Entitled to an Award of Attorneys' Fees Pursuant to 15 U.S.C. § 1117.**

Under 15 U.S.C. 1117(a), a court may award attorneys' fees to a party that prevails on several claims, including false designation of origin, unfair competition, and cybersquatting. *Id.*   These fees are awarded in "exceptional cases." *See id.*   A case is exceptional "when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014).

A case qualifies under the latter condition when there is "bad faith, fraud, malice, [or] knowing infringement." *See id.* at 314–15; *Coach, Inc.*, 2012 WL 13028160, at *10 ("[A] trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful.") (citations and quotation marks omitted); *see, e.g., Bethanie L. Mattek, LLC v. Donnay USA Ltd*, Civil Action No.: 13-6188(ES)(JAD), 2016 WL 6542710, at *2 (D.N.J. Nov. 1, 2016) (awarding attorneys' fees for defendant's knowing infringement when it continued to use plaintiff's mark without plaintiff's authorization, despite contract negotiations falling through).

Here, the court has found in favor of Sarto on its counterclaims for false designation of origin, unfair competition, and cybersquatting. (ECF No. 93).  Thus, it is entitled to attorneys' fees because there was "knowing infringement, bad faith,

12

fraud, and malice."  As the court previously held, Liger6 "knowingly infringed" Sarto's Mark by continuing to sell products on the website with SARTO's mark after Sarto terminated its relationship.   This act of cybersquatting was "an egregious example of bad faith." *See* (ECF No. 93).

Liger6's owner Mr. Bonelli also acted with "bad faith, fraud, and malice." He never had any intention to perform his part of this nonexistent oral contract, nor did he ever have a bona fide desire to be a distributor.  He instead was looking for a pretext in order to claim ownership of the SARTO mark so that he could use it to extort money from Antonio Sarto in the form of a contract. *See* Bonelli email (ECF No. 114-6 ("I am willing to waive 100% of ownership of the trademark, simultaneous with the signing of the contract")).   He then filed fraudulent trademark applications and this lawsuit with a malicious intent to force Antonio Sarto to spend money defending against Liger6's false claims.  And, he has grossly exaggerated the amount of costs he allegedly incurred in connection with the SARTO mark and, thereby, unduly prolonged this litigation by inducing this Court to deny the Sarto Parties' motion for summary judgment on the bogus oral contract claim.  This case fits under every listed form of "culpable conduct," and Liger6's actions were "exceptional" in its egregiousness; thus, the court is justified in awarding the Sarto Parties' their attorneys' fees.

This case is similar to *Renna v. Cty. of Union,* N.J. Civ. No. 2:11-3328 KM

MAH, 2015 WL 1815498 (D.N.J. Apr. 21, 2015).  There, a public access television program, Renna, brought an action for declaratory judgement after the County of Union of New Jersey threatened to sue it for using an illustration of the County Seal in its program. *See id.*  Because the County could not have trademark rights in its Seal, the Court awarded attorneys' fees. *See id.*  It held that there was an unusual discrepancy in the merits because the County had "asserted trademark rights that it knew, or should have known, did not exist." *Id.* at *2 It further clarified that "[a] case that is of exceptionally little merit may expose a party to an award of attorneys' fees." *Id.* at *3

As in *Renna*, Liger6 knew it had no rights in the SARTO name and mark when it brought this case.  And it continues to unduly prolong this litigation by advancing claims that are totally devoid of merit.  Counsel for the Sarto Parties sent counsel for Liger6 a letter with evidence showing that they had used the SARTO mark in commerce in the United States since at least 2008.  The letter was sent in April 2013.  Six month later, in August 2013, Liger6 chose to ignore this evidence and filed suit claiming that it had right to the SARTO mark.  These actions are clear evidence that Liger6 litigated this case in an "unreasonable manner."

And a court may treble the attorneys' fees when there is intentional infringement. *See Days Inn Worldwide, Inc. v. BFC Mgmt., Inc.*, 544 F. Supp. 2d

14

401, 406 (D.N.J. 2008) ("In assessing damages, the Court may award three times the amount of actual damages, including attorneys' fees[] where it finds intentional infringement.") (citing 15 U.S.C. § 1117(b)).  And, "the absence of damages is not fatal to a claim of attorneys' fees[.]" *Silva v. Karlsen*, 43 F. App'x 486, 488 (3d Cir. 2002).  Because Liger6 intentionally infringed the SARTO mark, the Sarto Parties are entitled to treble their attorney fees.

### C.      The Sarto Parties Are Entitled to Injunctive Relief.

The Sarto Parties also request that the Court grant injunctive relief in accordance with the prayer for relief contained in the Counterclaims.

### CONCLUSION

Liger6 injured the Sarto Parties through its bad faith, intentional actions. The Lanham Act requires compensation for damages and costs in these circumstances.  Thus, the court should award the Sarto Parties cybersquatting damages, attorneys' fees and injunctive relief.

Dated:   February 28, 2019

Respectfully submitted.

**ARENT FOX LLP**

By:     /s/ Eric Adam Biderman
        Eric Adam Biderman
        biderman.eric@arentfox.com
        1675 Broadway
        New York, New York  10019
        Telephone: (212) 484-3900
        Facsimile:  (212) 484-3990

        Michael A. Grow
        (*admitted pro hac vice*)
        grow.michael@arentfox.com
        1717 K Street, NW
        Washington, DC  20006
        Telephone: (202) 856-6000
        Facsimile: (202) 857-6395

        *Attorneys for Defendants/Counterclaim*
        *Plaintiffs Sarto Antonio and Sarto S.r.l.*