Michael Gesualdo
mgesualdo@rwmlegal.com
ROBINSON MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
Telephone: 973-690-5400

Mark A. Baghdassarian (*pro hac vice*)
mbaghdassarian@kramerlevin.com
Aaron M. Frankel (*pro hac vice*)
afrankel@kramerlevin.com
Cristina Martinez
cmartinez@kramerlevin.com
Jonathan R. Pepin
jpepin@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8363

*Attorneys for Plaintiff and Counterclaim
Defendant Liger6, LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIGER6, LLC,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>-against-<br><br><br>SARTO ANTONIO and SARTO S.r.l.,<br><br>    Defendants/Counterclaim Plaintiffs. | Civil Action No. 2:13-cv-04694-JLL-JAD<br><br>Hon. Jose L. Linares, U.S.D.J.<br><br>**PLAINTIFF LIGER6, LLC'S RESPONSE TO DEFENDANTS' BRIEF ON DAMAGES** |

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.     There is No Basis to Award Damages on Defendants' Cybersquatting Claim ............ 2

    II.    There is No Basis to Award Defendants Attorneys' Fees Under 15 U.S.C.
           § 1117 ........................................................................................................................ 4

    III.   There is No Basis to Issue an Injunction ..................................................................... 6

    IV.   Conclusion .................................................................................................................. 7

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Coach, Inc. v. Bag Place, Co.*,
  Civil Action No. 10-6226 (JLL), 2012 WL 13028160 (D.N.J. May 7, 2012) ........................... 5

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
  733 F.3d 393 (2d Cir. 2013) ........................................................................................................ 6

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .................................................................................................................... 7

**Federal Statutes**

15 U.S.C. § 1117 ............................................................................................................................. 7

## INTRODUCTION

Pursuant to the Court's February 21, 2019 Order (D.I. 226), Plaintiff ("Liger6") respectfully submits this Opposition to Defendants' Brief regarding Damages. As discussed, below, Defendants fall far short of establishing that they are entitled to any damages on their remaining counterclaims. Defendants' Brief is bereft of evidence or citations to the record, comprising mostly of unsubstantiated attorney argument.

Defendants seek $300,000 as supposedly "just compensation" for Liger6's use of three websites, but do not cite to a single shred of evidence showing any misuse by Liger6 of these websites. Unacknowledged by Defendants in their Brief, is the undisputed fact that Defendants were aware of these websites, authorized Liger6 to create the websites, and even encouraged and participated in the creation of the websites. *See, e.g.*, Jan. 23, 2019 Trial Tr. (Day 2) at 111:11-113:14. Liger6 did not make any money from these websites after the parties ceased working together. Defendants do not offer a scrap of evidence to the contrary. Indeed, for this reason, the Court granted Liger6's motion *in limine* precluding reference to these very websites and dismissed most of Defendants' counterclaims for failure "to make any credible proffer of evidence of damages." D.I. 201. Defendants should not be permitted to recover for cybersquatting by recycling these already rejected claims.

Defendants' plea for attorneys' fees and an injunction are equally without merit. The claim for attorneys' fees is based on the same allegations the Court already found were unsupported. And Defendants fail to justify the need for an injunction when Liger6 wound down its operations years ago.[1]

---

[1] Defendants' Statement of Facts consists mostly of unsupported allegations that are irrelevant to their request for damages. Liger6 addresses the relevant allegation in the Argument below. Although not pertinent to the request for damages, Liger6 adopts as its counter-statement of the facts Liger6's Factual Contentions as set forth in the Joint Pretrial Order. D.I. 154 at 7-10.

**ARGUMENT**

I. **There is No Basis to Award Damages on Defendants' Cybersquatting Claim**

There is no basis to award damages on Defendants' Cybersquatting claim because there were no sales or misuse of the website. The Court found in favor of Defendants on their Cybersquatting counterclaim because it found that Defendants own the Sarto trademark. D.I. 93 at 14. Shortly after the Court's finding, Liger6 took down the sartocycles.com website. D.I. 163 at 3. And since issuing the summary judgment order, the Court rejected Defendants' claims that Liger6 continued to operate or monetize the sartocycles.com website. D.I. 193 at ¶ 3 (granting motion *in limine* "to preclude any argument that Plaintiff is continuing to operate or monetize sartocycles.ocm or related websites."); D.I. 153, 170 (briefs in support of motion *in limine* setting forth in detail evidence demonstrating that there is no merit to Defendants claims). The Court also rejected Defendants' unsupported claims that Liger6's sales post-March 2013, either of SARTO-branded products or non-SARTO branded products, entitle Defendants to any damages. D.I. 193 at ¶ 3, 4; D.I. 201 at 1. Thus, there is no evidence of any sales, relevant commercial activity or misconduct relating to the sartocycles.com website that is the basis for the Cybersquatting claim.

Defendants' Brief offers no evidence contrary to the Court's findings. It claims that "Liger admitted reaping profits by selling Max Lelli bicycles and other bicycles and bicycle parts, while still using the infringing Sarto domain names on its website before and after it stopped doing business with the Sarto Parties." Def. Br. at 9. But Defendants do not offer any evidence tying the sale of remaining Max Lelli bicycles (which predate the relationship with Sarto) to the Sarto trademark. Defendants' only citation is to Dr. Bonelli's deposition, which states that any such sales were ***not*** under the Sarto trademark. Bonelli Dep. at p. 20 (Mr. Bonelli was asked about his sales of bicycle parts after termination of his relationship with Sarto: "Did you or Liger ever sell any bicycle frames to which the mark Sarto was affixed that were not actually made by Sarto? And

he answered: "Never."). Defendants' theory is that (1) Liger6 sold off its remaining Max Lelli inventory and (2) at the same time held sartocycles.com. But there was no link between the Max Lelli sales and the sartocycles.com website — i.e., the Max Lelli sales were not through the sartocycles.com website. Thus, there was no Cybersquatting from the Max Lelli sales. Indeed, the Court rejected this unsupported claim in granting Liger6's motion *in limine*. D.I. 193.

In addition to their debunked sartocycles.com website theory, Defendants also seek $200,000 in statutory damages for the sartobikes.com and sartobicycles.com websites. However, they do not offer evidence in their brief (or at any other time in this litigation) that Liger6 even used those websites commercially at any time or for any purpose, let alone in a way that supports any of Defendants' Counterclaims. There is no basis to award any recovery for those domain names which were never used.

Defendants also claim they lost revenue because of a threatening letter supposedly sent to one of Sarto's customers, the cloud of this litigation, and the diversion of prospective customers from their website. Def. Br. at 9. The Sartos again fail to offer any evidence to support these claims, which the Court already rejected in dismissing the Sarto's tortious interference claims. D.I. 201 (order dismissing tortious interference counterclaim); D.I. 198. Moreover, this alleged conduct does not even relate to the alleged cybersquatting.

All of the factors relevant to determining statutory damages weigh against awarding anything to Defendants. *Coach, Inc. v. Bag Place, Co.,* Civil Action No. 10-6226 (JLL), 2012 WL 13028160, at *10 (D.N.J. May 7, 2012) (listing factors).

(1) **the expenses saved and the profits reaped:** After taking discovery, Defendants failed to show that Liger6 made a single penny from improper use of sartocycles.com. D.I. 161.

(2) **the revenues lost by Defendants**: Defendants failed to show a single penny of revenue lost from sartocycles.com.  D.I. 161.

(3) **the value of the trademark**: the only evidence Defendants offer in support of the value of the trademark is that Liger6 spent a lot of resources to pursue its claims against Defendants and that it is an old mark.  Def. Br. at 9.  But there is no evidence that Liger6 benefited from or diminished the value of the trademark.  To the contrary, Liger6 dramatically increased the value of the SARTO mark in the United States. Jan. 24, 2019 Trial Tr. at 18:11-15; 32:14-22; 165:22-166:23; 174:1-176:17.

(4) **the deterrent effect on others besides the defendant and (7) the potential for discouraging defendant:** The Sartos offer no evidence of any ongoing activity by Liger6 or of any broader pattern of behavior by other similarly situated that warrants deterrence.  Again, once the Court found that Defendants own the SARTO mark, Liger6 stopped using the sartocycles.com website. D.I. 163 at 3.

(5) **whether the defendant's conduct was innocent or willful**: as set forth in the following section, Defendants fail to identify any evidence of bad faith.

(6) **whether a defendant has cooperated in providing particular records … to assess the value of the infringing material produced**: Liger6 voluntarily permitted Defendants to pursue a subpoena that verified that Liger6 did not profit from the sartocycles.com website.  D.I. 130-5 (Pretrial Conference Tr. at 7-8).

Thus, there is no basis to award damages on Defendants' Cybersquatting counterclaim.

II.     There is No Basis to Award Defendants Attorneys' Fees Under 15 U.S.C. § 1117

Defendants' claim for attorneys' fees under 15 U.S.C. § 1117 fails for many reasons. Defendants fail to show that this is an "exceptional case."  Defendants suggest that Liger6 demonstrated bad faith "by continuing to sell products on the website with SARTO's mark after

4

Sarto terminated its relationship." Def. Br. at 13. Defendants do not cite any evidence of such sales. This is not surprising because there were no sales. For this reason, the Court dismissed Defendants' counterclaims of unfair competition and unjust enrichment, which were premised on these non-existent sales. D.I. 201 at 1. Thus, there is no support for Defendants' claims of intentional infringement.

Defendants also suggest that Liger6 acted in bad faith because its owner Mr. Bonelli supposedly "never had any intention to perform his part of this nonexistent oral contract, nor did he ever had a bona fide desire to be a distributor." Def. Br. at 13. There is no evidence to support this claim. To the contrary, at trial, Liger6 provided substantial evidence of its good faith efforts to build the Sarto brand at great expense and of Liger6's success building the brand and a distribution network. *See* D.I. 227 at 5-7 (collecting evidence of Liger6's efforts to build the Sarto brand), *id.* at 7, 16 (success and value of Liger6's efforts). These efforts culminated in a relationship with Backcountry.com, a major online vendor, expected to be worth $1.5 million a year and with Soren Krebs, now the Sartos' primary distributor in the United States. Jan. 24, 2019 Trial Tr. at 18:11-15; 32:23-33:12.

Defendants' claim that Liger6 attempted to steal Sarto's brand is facially implausible. Liger6 filed a ***joint*** trademark application, consistent with the parties' oral agreement, that would have protected their joint ownership of the SARTO trademark in the United States. Jan. 23, 2019 Trial Tr. at 98:5-99:19; Jan. 24, 2019 Trial Tr. at 78:19-25. Mr. Bonelli kept Defendants fully informed about their joint trademark application and repeatedly sent draft contracts to Sarto noting the parties' joint trademark application. Jan. 24, 2019 Trial Tr. at 100:20-22. These actions disprove Defendants' theory that Liger6 attempted to steal the trademark in bad faith.

Finally, Defendants contend that Liger6 filed this suit based on a bogus and malicious claim and "grossly exaggerated its costs." Def. Br. at 13.  As set forth in Liger6's motion for judgment as a matter of law, to the contrary, the evidence in support of Liger6's claim was so strong that no reasonable jury could have found in Defendants' favor.  D.I. 227.  Having observed the trial, the Court can determine for itself if Liger6's claims were brought in good faith.  Defendants cite no evidence in their brief (and cited no evidence at trial) showing there was any deficiency in Liger6's financial records.  To the contrary, Ms. Bonelli kept extremely detailed financial records, and answered every question put to her by Defendants regarding these records.  Jan. 24, 2019 Trial Tr. at 191:6-192:1; 196:11-197:13; 198:1-201.14.

### III. <u>There is No Basis to Issue an Injunction</u>

Defendants fail to show than an injunction is warranted.  The entirety of Defendants' arguments consists of a single sentence: "The Sarto Parties also request that the Court grant injunctive relief in accordance with the prayer for relief contained in the Counterclaims." Def. Br. at 15.  Defendants do not even attempt to explain why an injunction is warranted.  Nor could they.  Liger6's operations wound down years ago.  Liger6 is not using Defendants' trademarks or website (and Defendants do not offer any evidence to the contrary).  And Defendants do not (and cannot) articulate any risk of harm from any reasonably anticipated activities of Liger6.

To support a permanent injunction, it was incumbent on Defendants to show "(1) that [they] had] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 422 (2d Cir. 2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

156 (2010)). Defendants do not address any of these factors, and there is no support for them in the record. Thus, Defendants fail to carry their burden to show that an injunction is warranted.

## IV.   Conclusion

For the foregoing reasons, the Court should deny Defendants' request for statutory damages on their Cybersquatting Claim, attorney's fees and an injunction.

Dated: March 7, 2019

By: */s/ Michael Gesualdo*
Michael Gesualdo
mgesualdo@rwmlegal.com
ROBINSON MILLER LLC
One Newark Center, 19th Floor Newark, New Jersey 07102
Telephone: 973-690-5400

Mark A. Baghdassarian (*pro hac vice*)
mbaghdassarian@kramerlevin.com
Aaron M. Frankel (*pro hac vice*)
afrankel@kramerlevin.com
Cristina Martinez
cmartinez@kramerlevin.com
Jonathan R. Pepin
jpepin@kramerlevin.com
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036 Telephone: (212) 715-9100
Facsimile: (212) 715-8363

*Attorneys for Plaintiff/Counterclaim Defendant Liger6, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above brief was served via email on all counsel of record on March 7, 2019 and was filed via the Court's CM/ECF system on this 13th day of March 2019.

*s/ Michael Gesualdo*
Michael Gesualdo
